Commonwealth *v.* Looser, Appellant.

256

Argued November 9, 1959. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Martin E. Cusick,* with him *Albert E. Acker, F. Joseph Thomas,* and *Wiesen, Cusick, Madden, Joyce, Acker and McKay,* for appellant.

*P. Richard Thomas,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., December 17, 1959:

The appellant is seeking a new trial after his conviction by a jury of involuntary manslaughter. The charge grew out of an automobile accident in which two passengers of the car which he was operating were killed. After refusing the defendant's motion for a new trial, the court below imposed the sentence from which this appeal was taken.

The evidence supports the jury's verdict. During the early morning of September 8, 1957, five young men—Looser, Wilt, Niederriter, Reash and Stuyvesant,

—were drinking at the Causeway Inn at Andover, Ohio, a few miles from the Pennsylvania border. There is no evidence that Looser, the defendant in this case, was drunk, but he admits that he had three or four bottles of beer that night. At about 3:30 A.M., these men left the inn and drove into Pennsylvania. They had talked about going to the V.F.W. in Linesville and were traveling in that direction, but whether or not the defendant intended going there is doubtful.

The defendant, with Wilt and Niederriter as passengers, was the first to drive away from the inn. Reash, with Stuyvesant as a passenger, followed Looser a few moments later. Reash immediately passed several cars in order to have no vehicles between the automobile he was operating and the defendant's automobile. For approximately six miles the two automobiles remained approximately 100 yards apart, traveling at a speed of approximately 65 to 70 miles per hour. Both drivers either slowed down or stopped their vehicles at a stop sign along the way, but again accelerated their speed to over 60 miles per hour.

When the automobile which the defendant was operating started around an "S" curve, Reash and Stuyvesant momentarily lost sight of it. A few seconds later they saw a cloud of dust and then the defendant's wrecked car ahead of them standing across most of the 18 foot paved portion of the road. In order to avoid striking the defendant's car, Reash drove off the highway and over a bank. On the way down the bank, the automobile turned completely over coming to rest upright on its wheels with Reash and Stuyvesant in the car unhurt. On the road above them were their three friends, Wilt and Niederriter dead, and Looser seriously injured, all lying beside Looser's wrecked car.

Reash's license to operate a motor vehicle had been suspended, he had been drinking heavily that night, and he was operating a car without the owner's con-

sent. He was in trouble and knew it. He went up to the highway, looked at the carnage, returned to his car, drove it up to the road and, along with Stuyvesant, left the scene. The case against Reash is not before us.

At the trial of Looser here being reviewed, Reash, who was in jail at the time, and Stuyvesant testified to the events substantially as set forth above. In evaluating their testimony, it might be noted that they were friends of Looser, and, as stated in the opinion of the court below, "were not unsympathetic to the defendant."

Looser told a different story. He said that he was driving carefully at about 40 miles per hour, talking to his passengers when one of them said, "Oh my God." He testified that at that instant he saw a flash of light in his rear view mirror and remembers nothing more until he regained consciousness in the hospital.

There was evidence that skid marks made by the defendant's automobile extended from a point on the highway a distance of 159 feet, then along the berm for 119 feet to a tree which the defendant's automobile struck so hard that it tore off one side of the car, and thence 87 feet to the place where the vehicle came to rest, a total of 365 feet.

There was evidence that the Reash car also left marks on the highway which at one place overlapped the defendant's skid marks and at another place ran parallel to them for approximately 50 feet.

The defendant attempted to show that the rear bumper and fender of his automobile had marks, which, he argues, were made by the Reash car striking it. It was the theory of the defendant that while he was proceeding around the "S" curve at 40 miles per hour, the car Reash was driving hit his car, causing the accident.

The defendant, having been convicted and sentenced, the evidence must be considered in the light most favorable to the Commonwealth. *Commonwealth v. Mitchell,* 181 Pa. Superior Ct. 225, 227, 124 A. 2d 407 (1956).

The appellant does not contend that the evidence is insufficient to support the verdict, but he seeks a new trial on the grounds of three alleged trial errors.

(1) The defendant contends that the trial judge erred in charging the jury concerning the criminal responsibility of the operator of a motor vehicle participating in a race on a public highway. His argument is not directed toward the accuracy of the charge. He contends that there was no evidence of a race, and, therefore, the trial judge should have made no reference to the law relating to racing.

After the trial judge had carefully, fairly and adequately charged concerning the evidence, the law and the duty of the jury, he was discussing the defendant's contentions. He then said, "Now, members of the jury, if the defendant was operating his car at a reckless and rash rate of speed at 65 to 70 miles per hour, and was operating in that manner and another car did come in contact with it slightly, *but* you would still say that the act of the defendant was a substantial factor in the causing of the deaths of these two men, he would still be guilty of the offense of involuntary manslaughter. Because it's a violation of the law to drive in a reckless manner. Reckless driving is unlawful, and included in the definition of reckless driving is racing on the highway with another car, and so when two cars are coming down the highway side by side at a high and unlawful rate of speed and racing and one car would come in contact with another one, and the act of both would be a substantial factor or a proximate cause in the death of the persons who were killed, both might be guilty of the crime of involuntary manslaugh-

ter. But of course here we are trying the defendant, Lawrence Jack Looser, . . ."

Subsequently the trial judge clarified the italicized "but" in the above quoted part of the charge, so that the jury knew if it found the defendant was racing it could convict him only "if" the racing was a substantial factor in causing the deaths. See *Commonwealth v. Root*, 191 Pa. Superior Ct. 238, 156 A. 2d 895.

Throughout the case counsel for the defendant attempted to show that the accident was caused by Reash striking the defendant's automobile as he was attempting to pass it.

As stated in the opinion of the court below: "Accordingly, numerous photographs were introduced to show the marks on the left fender of defendant's car (some photographs were introduced which showed indentations that weren't there), and finally the whole left rear quarter panel including the fender was brought into court. Much time was spent with defendant's witnesses in showing marks on the highway made by the Reash car and how they ran beside and overlapped marks made by defendant's car from which they attempted to draw the inference that the two cars must have been side by side or nearly so immediately before the accident. Reash and Stuyvesant were cross-examined at length, particularly the latter, on the question of their alleged effort to overtake the Looser car."

The jury is not required to accept the theory of either the Commonwealth or the defendant. It may believe part of the Commonwealth's evidence and part of the defendant's evidence. It may draw its own inferences from the evidence which it believes. The jury probably did not accept the defendant's contention that the accident was caused by the defendant's automobile being struck by the Reash car, but had it so concluded, it might also have inferred from the evidence that the two drivers were racing. The damage to the defend-

ant's automobile and the distance of the skid marks indicates that the speed of both cars immediately before the accident was excessive and probably even greater than the speed estimated by the Commonwealth's witnesses. For over six miles they had been traveling at an excessive rate of speed separated by a distance about the same as that which the defendant's automobile skidded at the time it was wrecked. There is evidence throughout the 800 pages of testimony from which the jury could infer that the defendant and Reash were racing.

The court's charge was fair and adequate. We have found no reversible error in it.

(2) The defendant contends that the admission into evidence of two photographs was reversible error. State police, upon arriving at the scene of the accident, found the wrecked automobile and three men lying on the highway by its right front fender. The officers contacted a professional photographer who came to the scene and took pictures of the wreck. When the photographer arrived, the defendant had been taken to the hospital, but the two bodies remained in the highway. Among the photographs taken at the direction of the police were two of the wrecked car from the side which showed the two bodies beside it. These photographs were admitted at the trial as exhibits over the objection of the defendant.

The appearances and positions of the wrecked automobile and the bodies were described by the witnesses without objection. Facts are frequently communicated to juries far more accurately by pictures than by words. For many years photographs have been "judicially recognized as of a high order of accuracy," and their use "is sanctioned beyond question." *Beardslee v. Columbia Township*, 188 Pa. 496, 502, 41 A. 617 (1898); *Udderzook v. Commonwealth*, 76 Pa. 340 (1874); *Commonwealth v. Dreamer*, 324 Pa. 220, 224,

188 A. 117 (1936); III Wigmore on Evidence (3rd Edition) §792.

Photographs showing the bodies of people who met violent death are generally gruesome, and the two admitted in the trial of this case were no exceptions.

The purpose of a trial is to determine the facts, and facts are not always pretty, particularly when they involve violent death. The facts necessary to decide the issue being tried in a court of law may be gruesome, repulsive, vulgar, even nauseating, but they cannot be avoided or ignored solely because they are. not pleasant to contemplate or visualize. If evidence is relevant, it is admissible even though it may be of a nature which violates the sensibilities of the jurors. Evidence is not rendered inadmissible because it is repulsive. Photographs relating to the issue being tried are inadmissible only when their sole purpose is to inflame the jury, create prejudice against the defendant, and arouse passions which may over-shadow reason. *Commonwealth v. Simmons,* 361 Pa. 391, 398, 65 A. 2d 353 (1949); *Commonwealth v. Novak,* 395 Pa. 199, 212, 150 A. 2d 102 (1959); *Commonwealth v. Ballem,* 386 Pa. 20, 26, 27, 123 A. 2d 728 (1956). Here the exhibits were informative in that they showed the condition and positions of the wrecked automobile and the bodies. What they depicted had a bearing upon whether or not the defendant was reckless. Furthermore, the Commonwealth was required to prove that Wilt and Niederriter died as a result of the accident, and the photographs were evidence of this. Counsel for the defendant argues that this was not an issue, but the record does not show that he admitted the deaths or their cause, and it was, therefore, necessary for the Commonwealth to prove this.

Photographs may be gruesome without being prejudicial. Where the photograph depicts the mutilated body of a murder victim, the juror's prejudices may be

aroused against the defendant by their visualizing the intentional brutality that would produce such horrible results. It does not necessarily follow that the pictures of the dead bodies would tend to inflame the jury against the defendant in this case. Unlike murder cases wherein the defendants are charged with deliberately inflicting the wounds which make the pictures gruesome, here the defendant was not accused of inflicting the wounds deliberately. The photographs do not suggest brutality on the part of the defendant. Furthermore, the jury could not easily overlook the fact that the defendant himself, unconscious and seriously injured, was lying in the roadway beside the two bodies only a few moments before the photographs were taken. It is difficult to evaluate the emotional reaction of people, but it is reasonable to assume that under the testimony presented in this case, the photographs could have created sympathy *for* the defendant by depicting the horrible predicament in which *he* was involuntarily placed by the accident.

It is for the trial court to determine whether photographs should be admitted into evidence. *Commonwealth v. Winter*, 289 Pa. 284, 289, 137 A. 261 (1927) ; *Commonwealth v. Patskin*, 372 Pa. 402, 411, 93 A. 2d 704 (1953). Appellate courts will not reverse the trial court for admitting photographs unless there is a flagrant abuse of discretion. *Commonwealth v. Bibalo*, 375 Pa. 257, 264, 100 A. 2d 45 (1953).

The trial judge warned the jury not to be moved by pity for the two boys who met their deaths in the accident, and that sympathy had no place in the jury box. He directed the jury to seek only the truth and "lay aside every other consideration." He did not specifically direct the jury not to permit *the exhibits* to inflame them.

After having warned the jury not to be moved by pity but to seek the truth from the evidence and lay

aside all other considerations, it was not reversible error for the trial judge to fail to specifically caution the juror against permitting the exhibits to inflame them. *Commonwealth v. Peronace,* 328 Pa. 86, 95, 195 A. 57 (1937).

The defendant quotes language from cases in which the admission of gruesome pictures of victims was held not to be reversible error, but he cites no case where a new trial was granted because a gruesome exhibit was prejudicial. As observed by Professor Wigmore, objections to evidence because it is gruesome are generally "frivolous" and "such objections have almost invariably been repudiated by the Courts." IV Wigmore on Evidence (3rd Edition) §1157, page 254.

Dehors the record, appellant presented to this Court a photograph showing the defendant's wrecked automobile immediately after the removal of the bodies. He argues that this photograph should have been offered by the Commonwealth at the trial instead of the two photographs showing the bodies. From the argument before us, we learned that the photographer first took pictures of the defendant's wrecked car while the bodies were lying next to it. While he was taking other photographs of the scene, including the skid marks on the road, the bodies were removed. Having taken all the pictures requested by the state police, the photographer took another picture of the wrecked car after the bodies were removed, hoping to sell it to a newspaper. He subsequently delivered a copy of this photograph to defense counsel prior to the trial of this case, but did not furnish the district attorney or police a copy of it because it was not among those which the police told him to take. The district attorney stated, —and we have no reason to doubt his word—that he did not know of the existence of this photograph until approximately three weeks before the case was argued in this Court. He filed with us an affidavit of the

photographer which substantiates his statement to us. Thus it appears that the defendant's counsel had a copy of this photograph at the time of the trial, and that the district attorney had no knowledge that the photograph had been taken. Under these circumstances, we need not consider whether the district attorney should have offered the photograph of the wrecked car which did not show the bodies instead of the two which were offered.

(3) The defendant contends it was error to permit the two above exhibits to be used to cross-examine witnesses when they were not used in the direct examination of those witnesses. Having been properly admitted into evidence, it was not error to use them to cross-examine witnesses who arrived at the scene of the accident before the defendant's automobile was removed.

President Judge MOOK, who tried this case, said in his opinion, "The court literally bent over backward to be fair to the defendant." He then listed numerous rulings within his discretion that favored the defendant. The case took over a week to try. The defendant was represented by able and aggressive counsel who used every technicality and every art of a talented trial lawyer to defend his client. We have read the nearly 800 pages of testimony and the charge of the court. We concur with the able trial judge that he *did* bend over backward to be fair to the defendant.

Judgment of sentence is affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.