Commonwealth *v.* Honeycutt, Appellant.

Submitted September 13, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

Before LIPPINCOTT, II, J.

*B. Barclay Surrick,* Assistant Public Defender, for appellant.

*Philip J. O'Malley,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., April 3, 1974:

This is an appeal from the lower court's denial of motions in arrest of judgment or for a new trial in an involuntary manslaughter case raising primarily the question of whether the trial court erred in permitting a witness to testify as to the defendant's manner of driving prior to a violent rear-end collision between defendant's car and the car of the deceased, Alvin Wilkins. The defendant, Nathaniel Honeycutt, was tried and convicted by a jury of involuntary manslaughter. The defendant's theory is that the testimony of a Mrs. Wright was irrelevant because her observations of his operation of his vehicle related to a distance too remote from the scene of the accident to have sufficient probative value to outweigh the prejudice created in the minds of the jury.

The particular facts of this case are as follows: At approximately 2:00 a.m. on December 19, 1971, Mrs. Wright was returning from her mother's house on U. S. Route 1, a four-lane divided highway which runs east-west in a rural area of Delaware County. While traveling in an easterly direction at approximately 55 m.p.h., the speed limit on this highway, she was passing an automobile when two cars came upon her very quickly and "tailgated" her vehicle until she was far enough beyond the car she had passed to safely return to the right lane. One of these cars was driven by the defendant Honeycutt and the other by an Eric Barren. At

this point both of these vehicles which had been pressing her from behind sped past her at a speed she estimated to be 70 m.p.h. and increasing. As soon as the second car passed her it cut sharply back into the right lane. It was this second car which Honeycutt was driving.[1] The Honeycutt and Barren cars continued up the highway side by side accelerating all the while. In seconds they were out of sight. All of this took place one to one and one-half miles west of the scene of the fatal accident in which the deceased, Mr. Wilkins, also driving his vehicle in an easterly direction, was killed.

Moments later, when Mrs. Wright came upon the scene, dust was still in the air on the curve on which the collision occurred. Although she did not see the deceased's vehicle, she did see the two vehicles which had passed her and which, as a result of the accident, were now facing in the opposite westerly direction. After stopping and ascertaining that no one was injured in the Honeycutt and Barren cars, Mrs. Wright left the scene and contacted the state police. Neither Honey-

---

[1] This was not Mrs. Wright's only encounter with Honeycutt that dark morning. Approximately one quarter of a mile before the cars passed her, Mrs. Wright had stopped on a small country road, which intersects Route 1, waiting to safely turn onto the highway when both cars came up very quickly behind her. One of the vehicles came extremely close to her rear bumper. Mrs. Wright had given this testimony at a preliminary hearing and was about to reiterate when defense counsel requested an offer of proof. Thereafter the trial court ruled that the testimony involving the stop sign incident was too remote to be admissible, but the court did allow the testimony regarding the appellant's passing her, over the objection of defense counsel. While we need not discuss the propriety of the trial court's exclusionary ruling concerning the first encounter, we do note that such testimony would have served to show that Mr. Honeycutt's reckless driving and state of mind did exist for a considerable period of time, rather than only momentarily while he was overtaking Mrs. Wright.

cutt nor Barren nor any of their passengers apprised Mrs. Wright of the fact that the Wilkins car had also been involved in the accident.

The police soon arrived and found the deceased's car approximately 110 feet *west* of Honeycutt's vehicle and impacted on a guard rail. They discovered the deceased underneath the car with his arm wedged between the drive shaft and the frame. The death was caused by massive internal injuries which were attended by numerous and severe lacerations and abrasions, most of which apparently occurred when the victim was thrown from and dragged by his car. While the ignition switch was in the "on" position, the engine was no longer running, and most of the damage to the car was done to the left rear and left side. The victim's car had also been turned 180° by the collision. On the other hand, Honeycutt's vehicle was primarily damaged in the right front. Paint samples taken from both cars demonstrated that they had indeed collided. Although the Barren car did not collide with either the Honeycutt or Wilkins car, it had jumped the medial strip and spun out of control at the point of impact of the other two vehicles, about 85 feet from the place where the victim's car finally stopped, and some 195 feet from where Honeycutt's car came to rest.

The police testified that when they arrived at the scene the occupants of the Honeycutt and Barren vehicles were laughing and joking. Honeycutt first told the police that he had been coming from the east, although he recanted when the police showed him that his front bumper was lodged on the guard rail 40 feet *west* of his car. In a subsequent written statement he stated that it was raining and that he had lost control of the car and hit the guard rail. The police testified that there had been no rain in the area and that the roads were dry.

Honeycutt now argues that the trial court erred in not excluding Mrs. Wright's testimony, and therefore erred in denying the appellant's post-trial motions in arrest of judgment or for a new trial. We disagree.

It has long been the law that the question of relevance of proffered evidence rests first and foremost in the sound discretion of the trial judge. *Thompson v. American Steel & Wire Co.,* 317 Pa. 7 (1934). In exercising this discretion the court should counterbalance the probative weight of the evidence against the danger that the jury may be unduly aroused by the facts offered into evidence. See McCormick, Evidence, §152 (1954). It is widely recognized that if the fact to be proved is speed, and speed alone, the observations of speed prior to an accident will usually be greatly circumscribed with respect to time and distance, unless they are otherwise corroborated. See generally Annot., 46 A.L.R.2d 9 (1956). Whether the testimony should be barred will vary with the facts from case to case: *Finnerty v. Darby,* 391 Pa. 300 (1958). Such a circumscription should not apply to the facts of the instant case for at least two reasons.

First, the Commonwealth did not seek merely to prove speed, rather it sought to demonstrate that the *manner* in which the appellant drove was reckless. Of course, while circumstantial evidence may only be minimally relevant with regard to one issue, the same evidence may be highly relevant to prove another. Thus, contrary to the usually strict limitation of evidence of prior speed when offered only to show speed at the time of the collision, it has been said that, "where recklessness, wantonness, or wilfulness is an issue it is frequently necessary, or desirable in order to establish a strong case, to show not only an indifference to consequences at the instant an accident occurred, but also that such a state of mind persisted for several min-

utes prior to the accident. Where evidence is offered for this purpose the court may admit testimony that the party was driving at a high and dangerous rate of speed at a relatively remote point." Annot., 46 A.L.R.2d 9, 62 (1956). See also *Tingle v. Foster,* 339 S.W. 2d 475 (Ky. 1960); *Ritchie v. State,* 296 S.W. 2d 551 (Tex. Crim. 1956); *McGuire v. Navarro,* 165 Cal. App. 2d 661, 332 P. 2d 361 (1958). In order to prove its case, the Commonwealth had to show more than the speed at which Honeycutt traveled; it had to show he drove in a manner which was "such a departure from prudent conduct as to evidence a disregard of human life or an indifference to consequences." *Commonwealth v. Hartle,* 200 Pa. Superior Ct. 318, 324 (1963). See also *Commonwealth v. Holman,* 160 Pa. Superior Ct. 211 (1947). Unlike the speed at which a vehicle is traveling, a state of mind which demonstrates "a marked disregard for the safety of others" is not likely to change significantly in a matter of seconds: *Commonwealth v. Clouser,* 212 Pa. Superior Ct. 208, 213 (1968). Thus, a great deal of latitude is appropriate when circumstantial evidence is offered to show a state of mind: 1 Jones on Evidence, §4:12 (6th ed. 1972). As Justice MUSMANNO has said, in a case where reckless driving was at issue, "To restrict the compass of a trial (criminal or civil) to the pinpoint of the culminating crisis would be to make verdicts of juries mere guesses." *Gregg v. Fisher,* 377 Pa. 445, 453 (1954). The trial court was careful, perhaps overly so (see note 1, *supra*), in protecting Honeycutt from evidence of low probative value.

Second, the Commonwealth did offer evidence which circumstantially corroborated the testimony of Mrs. Wright through slides taken the day after the accident and the testimony of the state police officers who arrived at the scene, which recreated the accident scene for the jury. There is no requirement that the corrobor-

ative evidence be only that of an eyewitness. All the facts point unequivocally to reckless conduct by the defendant Honeycutt, and thus fortify that inference which the Commonwealth hoped the jury would also draw from Mrs. Wright's testimony. There is no reason for the court and jury to ignore the "geographical physics" of the accident which compel the conclusion that Honeycutt was racing with the Barren vehicle at the time the accident occurred, when intelligent and prudent persons would certainly recognize its significance: *Mitchell v. Stolze*, 375 Pa. 296 (1953); *Flowers v. Dolan*, 155 Pa. Superior Ct. 378 (1944). The circumstances were sufficient to indicate that Barren and Honeycutt were still driving recklessly, and most likely racing, when Honeycutt struck the victim's vehicle. The Honeycutt vehicle was going so much faster than Wilkins' automobile that the force of the impact threw Mr. Wilkins from the car. Even though Honeycutt struck the Wilkins auto, hit the guard rail, and revolved at least 180°, it did not stop until it had traveled 195 feet from the point of impact. The Barren vehicle was forced to cross the medial barrier and swerve out of control to avoid being directly involved in the collision. Finally, under the circumstances, the conduct of the group after the arrival of the police exuded a reckless and marked disregard for the safety of others. While this circumstantial evidence may not have been sufficient, standing alone, to convince a reasonable man beyond a reasonable doubt that Honeycutt was racing when the collision occurred, it certainly was amply corroborative of Mrs. Wright's observations to make her testimony admissible.

The combined weight of the evidence was clearly sufficient to warrant the jury's returning a verdict of guilty of involuntary manslaughter. In Pennsylvania a defendant may be convicted for involuntary manslaughter when his racing with another vehicle was

the proximate cause of a fatal accident: *Common-wealth v. Looser,* 191 Pa. Superior Ct. 254 (1959); *Commonwealth v. Root,* 191 Pa. Superior Ct. 238 (1959). The evidence of speed, acceleration and running abreast, combined with all the other circumstantial evidence, was more than sufficient to convince a jury beyond a reasonable doubt that the defendant Honeycutt was racing when the accident occurred. *Id.* See also Annot., 24 A.L.R. 3d 1286, 1297-1302 (1969).

Lastly, defendant Honeycutt contends that he is entitled to a new trial because the trial court committed a prejudicial error during its charge to the jury. The particular error cited occurred when the court, in summarizing the evidence for the jury, said: "You have speeding or racing, taking the Commonwealth's evidence, *which you have to believe of course,* but you have evidence of speeding or racing a mile to a mile and a half away; you have evidence of an impact on a bad curve." This misstatement, if it occurred at all,[2] was not objected to by the defense counsel, as required by Pa. R. Crim. P. 1119(b); and therefore, to be cognizable on appeal, the error must be so basic and fundamental that it "affects the merits or justice of the case, or, as some cases express it, offends against the fundamentals of a fair and impartial trial. . . ." *Commonwealth v. Jennings,* 442 Pa. 18, 25 (1971). See also

----

[2] It seemed more likely to us that the reporter erred in either the recordation or the transcription of this charge. From reading the entire charge, it is more likely that the lower court said, "which you [do not] have to believe of course." This is also apparent from a common sense reading of the questioned phrase itself. However, we are unable to ascertain whether this suspicion is true because the original stenographic record has been destroyed. Also, at another point during the court's lengthy charge to the jury, the court misread one word of the involuntary manslaughter statute, but counsel for both the Commonwealth and the appellant brought the oversight to the court's attention, and it was promptly corrected.

*Commonwealth v. Sullivan,* 450 Pa. 273 (1973); *Commonwealth v. Glover,* 446 Pa. 492 (1972); *Commonwealth v. Butler,* 442 Pa. 30 (1971); *Commonwealth v. Campbell,* 196 Pa. Superior Ct. 380 (1961), *cert. denied* 371 U.S. 901 (1962). Before determining whether any error in the instructions to the jury is of this basic and fundamental nature, we should examine the entire charge in order to appreciate the probable affect of the alleged error upon the minds of the jurors. *Cupp v. Naughten,* 414 U.S. 141, 38 L. Ed. 2d 368 (1973); *Commonwealth v. Glover,* supra.

It should first be noted that the charge on this point was clearly erroneous, as the credibility of all the witnesses is for the jury, and no witness need be believed even if not cross-examined or otherwise contradicted: *Commonwealth v. Chermansky,* 430 Pa. 170 (1968). See also 2 Henry, Pennsylvania Evidence §799 (1953). However, at other points during the charge the court clearly and unequivocally instructed the jury that there was no requirement that any witness need be believed. While pointing out several factors for the jury's consideration regarding credibility, the court explained: "In determining what took place here, you will have to pass upon the credibility of the witnesses. . . . You may also consider the inherent probability or improbability of *any* testimony given by *any* of the witnesses." (Emphasis added.) Subsequently, the court stated, "In short, you should bring to bear all of the faculties you have acquired as adult human beings which enable you to tell who is telling the truth and who is not telling the truth." In addition the court also fully and properly instructed the jury on the "presumption" of innocence and the Commonwealth's obligation to prove Mr. Honeycutt guilty beyond a reasonable doubt.

Since the Court fully instructed the jury on the issue of the credibility of the witnesses, this unfortu-

nate slip of the tongue, which would have been promptly corrected if brought to the court's attention, was not so basic or fundamental an error to require a reversal of the judgment of the lower court. "Since the jury . . . was instructed to carefully weigh and assess the credibility of all the witnesses, no error, fundamental in dimension can be said to have been wrought. . . . We will not allow defense counsel to sit quietly by and thereafter on appeal take advantage of what was a correctable trial omission." *Commonwealth v. Glover*, 446 Pa. at 502-03. See also *Commonwealth v. Campbell*, supra.

Judgment of sentence affirmed.