411 A.2d 503

COMMONWEALTH of Pennsylvania

v.

Thomas HODGE, Appellant.

Superior Court of Pennsylvania.

Submitted April 9, 1979.

Filed Sept. 26, 1979.

234

John C. Pettit, Washington, for appellant.

Francis C. Sichko, Assistant District Attorney, Washington, for Commonwealth, appellee.

Before VAN der VOORT, SPAETH and WATKINS, JJ.

SPAETH, Judge:

A jury convicted appellant of statutory rape [1] and involuntary deviate sexual intercourse.[2]  Post-verdict motions were denied and appellant was sentenced to five to ten years for statutory rape and to seven to fourteen years for involuntary deviate sexual intercourse.  The sentences were concurrent.  On this appeal appellant argues: (1) that the verdicts were against the weight of the evidence; (2) that the trial judge erred in admitting in evidence testimony concerning offenses by appellant for which he was not on trial; (3) that the trial judge erred in admitting in evidence certain impeachment testimony;  and (4) that he was improperly denied his right to a preliminary hearing.

1.  18 Pa.C.S. § 3122.

2.  18 Pa.C.S. § 3123.

On November 23, 1976, the victim, appellant's eleven year old stepdaughter, was hospitalized in Washington County, Pennsylvania, for an overdose of pills.[3]  When asked why she had taken the overdose, she answered that she had done so because she was tired of the sexual abuses she was suffering from appellant.  An examination by a gynecologist confirmed that sexual intercourse had occurred, and that the damage to the victim's hymen had not been recent. County child welfare officials and representatives of the district attorney's office interviewed the victim concerning her allegations against appellant.  She described to them how appellant had continually abused her from October 1975 through November 1976.

When the victim returned home after her six day stay in the hospital, appellant was missing.  The victim's mother took her and the other children with her to Ohio where they met appellant and traveled together to Arizona.  Appellant, the victim, and the rest of the family were in Arizona when the criminal complaint was filed against appellant on January 31, 1977.  The complaint charged appellant with committing statutory rape and involuntary deviate sexual intercourse with the victim.  Arizona authorities were notified of the charges and they detained appellant.  An extradition hearing was held on April 6, 1977, and appellant was returned to Washington County on April 18, 1977, to stand trial.  Trial began on September 15, 1977.

After a county child welfare official and a detective had testified as to their investigation and the victim's description of appellant's abuse, the victim herself took the stand.  She testified that appellant would often take her or one of the other children on the overnight trips he made as part of his job as a truck driver.  She said that during one particular trip to Michigan in the fall of 1975, she and appellant were alone in the truck when he tried to have sexual intercourse with her but failed to achieve full penetration.  She testified further that when they were back in Washington County, on

**3.** The record does not indicate what type of pills the victim took. She testified that they were her mother's pain pills.

a trip to Dutch Fork Lake Park, appellant tried again to have sexual intercourse with her but again failed to achieve full penetration. She said that appellant finally achieved full penetration in April 1976 when she and he were on a trip to Chicago, Illinois. Thereafter, according to the victim, appellant had intercourse with her at home and at other places in and around Washington County. She also testified to instances where appellant had anal and oral intercourse with her.

The victim was cross-examined at length by appellant's attorney. He confronted her with several letters she had written to various public officials while appellant had been incarcerated in Arizona and Washington County. These letters, signed by the victim and notarized, stated that she had lied about appellant and asked for his release. Appellant's attorney also introduced the victim's earlier testimony at the Arizona extradition hearing, where she had stated under oath that appellant had not committed the alleged crimes. On cross-examination the victim admitted to having written the letters and to having testified at the extradition hearing but asserted that she had lied in her letters and at the hearing and was now telling the truth.

Appellant's wife, the victim's mother, testified on appellant's behalf. She said that her daughter was a liar and that the things she had said about appellant were untrue. She also said that appellant had been a good father.[4] Appellant also testified, and disputed the story told by the victim.

–1–

■ In testing a claim concerning the weight or sufficiency of the evidence in a criminal case "we first accept as true all the evidence upon which the finder of fact could properly have reached its verdict, and then, after giving the Common-

4. The mother testified that her daughter was constantly reading sex books, thus implying that this reading may have been the source of the victim's allegations of sexual abuse. There was also evidence in the letters written by the victim that she was upset on the day she took the pills because her mother and stepfather had ordered her to stop seeing her boyfriend and to give back the rings he had given her.

wealth the benefit of all reasonable inferences arising from that evidence, we ask whether the evidence and the inferences arising from it are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crimes of which he has been convicted." *Commonwealth v. Steward*, 263 Pa.Super. 191, 199, 397 A.2d 812, 815–16 (1979); *see Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1979).

Appellant's argument is not that the victim's testimony, if believed, was insufficient, for it is clear that the evidence sufficiently set forth the elements of both the crime of statutory rape and the crime of involuntary deviate sexual intercourse. Appellant's argument is rather directed to the weight of the evidence in that he asserts that the victim's story should not have been believed. In support of this argument he points to what he describes as substantive contradictions in the victim's testimony and to the fact that her testimony contradicted her earlier letters and her testimony at the extradition hearing. Appellant also relies on the testimony by his wife, the victim's mother, that her daughter was a liar.

We have reviewed the record and have found no substantive contradictions that lead us to the conclusion that the victim's story should not have been believed. The jury could have attributed the victim's earlier letters and her testimony at the extradition hearing to her fear of appellant and pressure placed upon her.[5] Moreover, the testimony of her mother was impeached on rebuttal.[6] In any event, appellant's argument is one of credibility, and it is settled that "evaluation of a witness's credibility is for the factfinder, who may believe all, part, or none of the witness's testimony." *Commonwealth v. Darush*, 256 Pa.Super. 344, 351, 389 A.2d 1156, 1159 (1978); *See Commonwealth v.*

5. The victim's sister said that while the whole family was in Arizona, appellant had told them that there were going to be some "sorry son of a bitches" if he went to prison.

6. *See* Part 3, *infra.*

*Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976). Here, the jury, after viewing the witnesses and hearing their testimony, chose to believe the story told by the victim. The jury's decision to believe the victim and to find appellant guilty is supported by the record, and it is not the duty of this court on appeal to disturb that decision. *Commonwealth v. Farquharson, supra. See Commonwealth v. Stago,* 267 Pa.Super. 90, 406 A.2d 533 (1979).

–2–

The trial court refused to strike portions of the victim's testimony in which she described appellant's sexual abuse of her in Chicago, Michigan, and other places outside of Washington County. Appellant argues that since Washington County had no jurisdiction over crimes committed in those places, he could not be convicted of those crimes in Washington County, and therefore the evidence of those crimes was inadmissible. *See Commonwealth v. Bradley,* 243 Pa. Super. 208, 364 A.2d 944 (1976).

The issue presented by this argument is whether the testimony concerning incidents of sexual abuse outside of Washington County fell within one of the recognized exceptions to the general bar against evidence of other crimes. *See Commonwealth v. Spruill,* 480 Pa. 601, 391 A.2d 1048 (1978); *Commonwealth v. Martin,* 479 Pa. 63, 387 A.2d 835 (1978). However, we need not resolve this issue, for appellant has not properly preserved it for our review.

The first time appellant made any argument with respect to the admission of the testimony concerning the incidents of sexual abuse outside of Washington County was when he made a motion to strike such testimony, after the Commonwealth had rested its case. Appellant's counsel made no objection at any time during the Commonwealth's case, when the testimony was being given. Moreover, when he made the motion to strike, counsel stated that he would

240

be satisfied if the court would give a cautionary instruction.[7] At the end of the trial the court gave a cautionary instruction, and when asked if he had any objection to the charge, appellant's counsel said that he had none. *See Commonwealth v. Firth*, 479 Pa. 333, 388 A.2d 683 (1978).[8]

–3–

On direct examination appellant's wife, the victim's mother, testified that she did not believe her daughter's story and that she had had trouble with her daughter telling lies in the past. She was questioned as follows:

Q  Mrs. Hodge, do you believe that Debbie's testimony regarding these sex acts committed against her is true?

A  No, sir, I can't believe it.

Q  When did she first tell you about them?

A  In November, when we took her to the hospital.

Q  When you say "we", who do you mean?

A  Tom and I.

Q  Tom is the defendant?

A  Yes, sir.

Q  Did you believe them then?

A  No.

Q  Why not?

A  Because he has been tood [*sic*] good of a father to those kids to abuse them in that way. I just can't believe it.

N.T. 160–61

**7.** The trial judge said that he would review the motion and take care of the matter in the charge. Appellant's counsel said "All right", and proceeded to call his first witness.

**8.** In his post-verdict motions appellant did not dispute the court's dismissal of the motion to strike the evidence but argued that the curative instruction was insufficient. The failure to object to the instructions at trial constituted a waiver of that claim. Similarly, the failure to object to the dismissal of the motion to strike in the post-verdict motions constituted a waiver of that claim.

On cross-examination the mother was questioned with respect to a prior child welfare proceeding as a result of which her children, including the victim, had been placed in a foster home after a hearing involving allegations of sexual abuse by appellant. This prior proceeding had taken place in 1973. Appellant made no objection to this questioning. The mother was also cross-examined as to whether in 1973 she had gone to the district attorney's office and been questioned there concerning appellant's abuse of his children.

On rebuttal the Commonwealth called Ms. Mildred Spalla of the Washington County Child Welfare Office. Ms. Spalla was asked whether the mother had made any statements to her inconsistent with the mother's trial testimony that appellant had been a good father. Ms. Spalla replied that on December 12, 1973, she and the mother had gone to the district attorney's office and there the mother had said that the victim had told her that on occasion appellant had attempted to molest her.

On rebuttal the Commonwealth also called Detective William Munz, who stated that he had been present at the 1973 meeting in the district attorney's office. The detective was questioned as follows:

Q In your presence, did Mrs. Hodge make any statements indicating that Mr. Hodge was not a good father?

A Yes.

Q What was that statement?

A She mentioned about they were on a trip and he was messing with the girls. She was driving the truck and he was in the back and it was out of the state, that's why we took no action.

Q Mrs. Hodge was driving the truck did you say?

A Mrs. Hodge was driving the truck and he was in the back with the girls evidently and if I recall right, one of the girls came to the window and Mrs. Hodge stopped the truck or something. It was out of state, out of our jurisdiction.

N.T. 310

Appellant has not argued either to the court below or to this court on appeal that the method of impeachment was improper, nor did he make any specific objection to the foundation for the impeachment or to either Ms. Spalla's or Detective Munz's statements as not constituting impeachment. His sole argument both here and below is that the substance of Ms. Spalla's and Detective Munz's testimony on rebuttal was so prejudicial that it should not have been admitted. Accordingly, our concern on this appeal is not with the impeachment technique employed by the Commonwealth but only with the substance of the impeaching statements.

The propriety of permitting rebuttal evidence is within the discretion of the trial judge. *Commonwealth v. Hickman*, 453 Pa. 427, 432, 309 A.2d 564, 567 (1973). In deciding whether to admit evidence, potential prejudice is always a factor to be considered, and "evidence which is logically relevant should be excluded where its probative value is outweighed by the unfair prejudice which would result from its admission." *Commonwealth v. Hickman, supra,* 453 Pa. at 434, 309 A.2d at 568; *Commonwealth v. Honeycutt,* 227 Pa.Super. 265, 323 A.2d 775 (1974). The rebuttal testimony in this case was indeed prejudicial, for it placed in evidence the fact that appellant had previously been accused of a similar crime. The question, therefore, is whether the trial judge in the exercise of his discretion should have concluded that this prejudicial aspect of the evidence outweighed its probative value. Another way to put this question is to ask whether the evidence was so prejudicial that the judge should have concluded that its admission would result in the jury being so aroused as to be unable to decide the case in an impartial manner. *Commonwealth v. Honeycutt, supra.*

Prejudicial evidence, including evidence of other crimes, is often admissible at a criminal trial. *See e. g. Commonwealth v. Brown,* 482 Pa. 130, 393 A.2d 414 (1978)

(evidence of prior crime admissible to show motive); *Commonwealth v. Middleton*, 260 Pa.Super. 571, 394 A.2d 1293 (1978) (evidence of prior crime admissible to show identity); *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974) (evidence that deceased wife had caused appellant to be arrested for her assault admissible to rebut defendant's contention that he had no motive to kill her and that their marriage relationship had been compatible). For instance, a reputation witness called by the defendant may be asked on cross-examination whether any of those who spoke to him of the defendant's reputation referred to the defendant's prior arrest or conviction. *See Commonwealth v. Mayfield*, 262 Pa.Super. 96, 396 A.2d 662 (1978). Although the evidence of a prior arrest or conviction is prejudicial, its probativeness as an impeachment device saves it from exclusion as it "affords the prosecution an effective means of attacking the credibility of a reputation witness called by the defendant." *Commonwealth v. Mayfield, supra*, 262 Pa.Super. at 112, 396 A.2d at 670 (SPAETH, J., Opinion in Support of Reversal); *see Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

In this case, the trial judge did not abuse his discretion in resolving the balance between probativeness and prejudice in favor of the Commonwealth. The evidence not only impeached the mother's testimony that appellant was a good father but also her testimony that her daughter should not be believed, for according to Detective Munz, the mother herself had said in 1973 that appellant had been "messing with the girls." The detective's testimony also added credence to the victim's testimony, and along with Ms. Spalla's testimony, rebutted to some extent an implication that the victim had made up a story about being sexually abused in order to hide her real reasons for taking the overdose.[9] Moreover, this case was based almost solely on the credibility of the victim. She was the Commonwealth's only eyewit-

9. The detective's and Ms. Spalla's testimony also to some extent could be interpreted by the jury as weakening the implication that the victim got her ideas from reading sex books, *see note 4 supra*, for in 1973 the victim was only eight years old.

ness, and except for the gynecologist's testimony that there had been intercourse, hers was the only direct evidence of the crime. The trial judge could in his discretion decide that it would have been unfair to permit the mother of the victim to impeach her own daughter and testify in favor of her husband while not permitting the Commonwealth to impeach the mother. In recognition of the prejudicial nature of the rebuttal testimony a limiting instruction might have been appropriate, but appellant did not ask for one, and does not argue on this appeal that one was required. *See Commonwealth v. Tervalon*, 463 Pa. 581, 591–92 & n.8, 345 A.2d 671, 677 & n.8 (1975).

–4–

When the information was filed, appellant was in Arizona contesting extradition to Washington County. The version of Rule 231 of the Pennsylvania Rules of Criminal Procedure then in effect provided that "[w]hen the attorney for the Commonwealth certifies to the court of common pleas that a preliminary hearing cannot be held for a defendant because the defendant cannot be found in the Commonwealth . . . the court may grant leave to the attorney for the Commonwealth to file an information with the court without a preliminary hearing." Pa.R.Crim.P., Rule 231.[10] Thus, since appellant was in Arizona, the information here could with the court's permission properly have been filed without a preliminary hearing. *See Commonwealth v. Rhodes*, 250 Pa.Super. 210, 378 A.2d 901 (1977). The record is unclear as to whether the district attorney in filing the information without a preliminary hearing acted

10. Pa.R.Crim.P., Rule 231 was amended on April 26, 1979. The amended rule was effective as of July 1, 1979. It provides that "[w]hen the attorney for the Commonwealth certifies to the court of common pleas that a preliminary hearing cannot be held for a defendant because the statute of limitations will otherwise bar prosecution, an information is necessary in order to extradite the defendant, or a preliminary hearing cannot be held for other good cause, the court may grant leave to the attorney for the Commonwealth to file an information with the court without a preliminary hearing."
Pa.R.Crim.P., Rule 231(a).

with the court's permission. Even so, we have concluded that the issue of whether appellant was entitled to a preliminary hearing has been waived.

It is settled that alleged defects in the indictment, the information, or in the proceedings pursuant thereto, are to be remedied by a motion to quash the indictment or information. *Commonwealth v. Walker*, 243 Pa.Super. 388, 365 A.2d 1279 (1976); see *Commonwealth v. Bunter*, 445 Pa. 413, 419–20, 282 A.2d 705, 707–08 (1971). Appellant, however, did not file a motion to quash the information.[11] Instead, he first raised the issue of his right to a preliminary hearing in his post-verdict motions. The issue has therefore been waived. *See Commonwealth v. Lewis*, 227 Pa.Super. 172, 174 n.1, 323 A.2d 65 n.1 (1974).

Affirmed.

11. Appellant did move to dismiss the information, but only on Rule 1100 grounds.