573 A.2d 595

**COMMONWEALTH of Pennsylvania**

v.

**Alan Jay WARD, Appellant.**

Superior Court of Pennsylvania.

Argued March 15, 1990.

Filed April 19, 1990.

542

John R. DeAngelis, Pittsburgh, for appellant.

James R. Gilmore, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CIRILLO, President Judge, and FORD ELLIOTT and BROSKY, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Allegheny County. We reverse.

Appellant Alan Jay Ward was found guilty of violating 75 Pa.C.S. § 3367, Racing on the Highways, before District Justice Lee Peglow. A trial de novo was held before the Honorable Raymond Scheib. Judge Scheib found Ward guilty, and sentenced him to pay a fine of $210.00. Post-trial motions were filed and denied, and this appeal followed. Ward raises two issues for our review:

(1) Whether the court erred in finding the defendant guilty of violating 75 Pa.C.S. § 3367 in that the statute specifically criminalizes driving conduct that is competitive or exhibitionary in nature and no evidence was presented that would show involvement by other parties required by nature to meet the competition or exhibition parameters of the statute?

(2) Whether the Commonwealth presented evidence which was sufficient to prove beyond a reasonable doubt that

Alan J. Ward was guilty of a violation of 75 Pa.C.S. § 3367?

At trial, Officer John O'Shea testified that on February 28, 1988, he observed Ward driving a 1972 Oldsmobile coupe. Officer O'Shea watched as Ward exited a parking space in the parking lot of the Foodland Shopping Center. Ward backed his vehicle out of the parking space. Officer O'Shea stated that Ward's acceleration caused his tires to squeal. Ward then stopped at a stop sign, and entered onto the eastbound lane of Route 30. Officer O'Shea testified that as Ward proceeded eastbound on Route 30, he again made a loud squealing sound with his tires. Officer O'Shea pursued Ward, stopped him approximately a mile and a half down the road, and issued Ward a citation for racing on the highway. 75 Pa.C.S. § 3367.

Ward testified on his own behalf. He stated that when he pulled out from the parking lot onto the street, that his "tires might have spun in the gravel[,]" and that there was "an excessive amount of gravel in the parking lot," which caused his tires to spin.

Section 3367(b) of the Vehicle Code provides:

*No person shall drive a vehicle on a highway in any* race, speed competition or contest, drag race or acceleration contest, test of physical endurance, *exhibition of speed or acceleration,* or for the purpose of making a speed record, and no person shall in any manner participate in any such race, competition, contest, test or exhibition.

75 Pa.C.S. § 3367(b) (emphasis added). Ward argues on appeal that because there was no other car involved, his conduct does not fall within the meaning of the statute. The Commonwealth argues that Ward's conduct falls within the statutory prohibition of driving a vehicle on a highway in any "exhibition of speed or acceleration[.]" 75 Pa.C.S. § 3367(b).

We must first determine whether the rapid acceleration of an automobile on the highway in such a manner as to cause the tires to spin and squeal constitutes an "exhibition

of speed or acceleration" in violation of section 3367(b) of the Motor Vehicle Code. Our review of the case law in Pennsylvania fails to disclose any court decision holding this type of conduct to be in violation of section 3367. Rather, our research has disclosed that each case pertaining to a prosecution under section 3367 involved at least two motor vehicles, and fell within the statutory prohibitions against "racing" or "drag racing." *See, e.g., Commonwealth v. Frye*, 357 Pa.Super. 395, 516 A.2d 38 (1986); *Commonwealth v. Honeycutt*, 227 Pa.Super. 265, 323 A.2d 775 (1974); *Commonwealth v. Miller*, 197 Pa.Super. 315, 179 A.2d 251 (1962); *Anen Motor Vehicle Operator's License Case*, 194 Pa.Super. 379, 169 A.2d 600 (1961); *Commonwealth v. Root*, 191 Pa.Super. 238, 156 A.2d 895 (1959); *Commonwealth v. Looser*, 191 Pa.Super. 254, 156 A.2d 905 (1959); *Commonwealth v. Levin*, 184 Pa.Super. 436, 135 A.2d 764 (1957). In each of these cases, speed competition was a basic element.

Although there has long been legislation directed against speeding or reckless driving, statutes specifically aimed at racing, or drag racing, are of later origin. *See generally* 71 Am.Jur.2d, Automobiles and Highway Traffic § 323. In defining the illegal activity isolated by the anti-racing statutes, both the statutes and the courts have tended to use the terms "race" and "drag race" without careful distinction, apparently taking the view that any "speed competition" on the highways or public streets was the essence of the unnecessarily dangerous activity which was sought to be proscribed. *Id.; Commonwealth v. Honeycutt*, 227 Pa.Super. 265, 323 A.2d 775 (1974).[1]

■ This does not mean, however, that the statute prohibits only competitive conduct. Though the statute is primarily aimed at competitive racing, alternative language

---

1. Rapid acceleration, as well as other elements of highway behavior such as simultaneous starting and running abreast, have been frequent evidentiary elements in racing prosecutions. Ordinarily, however, any one of these factors has been only one of several items of adverse evidence in any successful racing prosecution. 71 Am.Jur.2d, Automobiles and Highway Traffic § 323; *see also* Annotation, 24 ALR 3d 1282.

in the statute is directed to exhibitions of speed or acceleration. These alternative offenses do not require more than one driver. The language of the statute clearly prohibits a person from driving a vehicle on a highway in any "exhibition of speed or acceleration." 75 Pa.C.S. § 3367(b). Therefore, the absence of the element of competition in this clause does not necessarily remove Ward's conduct from the parameters of the statute. Thus, we cannot agree with Ward's argument that his conduct does not fall within the prohibitions of the statute simply because he was not competing with another driver. *See Commonwealth v. Hill,* 236 Pa.Super. 572, 346 A.2d 314 (1975), *affirmed in part, vacated in part,* 481 Pa. 37, 391 A.2d 1303 (1978) (statute must be construed to give effect to all of its language).

■ Ward also argues that his conduct does not fall within the statute's prohibition against exhibitions of speed or acceleration because there was no indication "that there was a crowd for which [he] was performing." The statute does not define "exhibition," nor do the few cases which have interpreted this statute. Webster's New International Dictionary, 3d edition, defines exhibition as "an act or instance of showing, evincing, or showing off; a public show or showing." Ward argues that the statute encompasses only those situations where the individual purposefully gathers an audience to observe his conduct. We disagree.

The purpose of section 3367 is to ensure highway safety.[2] It is common knowledge that the deliberate screeching of tires produces tension, which may increase nervousness in

2. Under the Statutory Construction Act, 1 Pa.C.S. § 1921 et seq., we are bound to consider the object sought to be attained by the legislature in enacting the statute at issue, and to the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c); *Commonwealth v. Hess,* 270 Pa.Super. 501, 411 A.2d 830 (1979). *See also Busy Beaver Bldg. Centers, Inc. v. Tueche,* 295 Pa.Super. 504, 442 A.2d 252 (1981) (language of a statute must be read in a sense which harmonizes with the subject matter and its general purpose and object); *Commonwealth v. Barone,* 276 Pa.Super. 282, 419 A.2d 457 (1980) (where superior court determines that words or phrases of act are equivocal or ambiguous, legislative intent may be ascertained by examining the harm sought to be regulated and prevented, the object sought to be

drivers and pedestrians, thereby increasing the likelihood of an accident. *See Beneficial Consumer Discount Co. v. Savoy*, 291 Pa.Super. 469, 436 A.2d 687 (1981) (judicial notice may be taken of matters of common knowledge of facts which are so well known that they are incontestable); *see also People v. Grier*, 38 Cal.Rptr. 11, 226 Cal.App.2d 360 (1964) (court upheld defendant's conviction for exhibition of speed or acceleration under a similar statute, stating that a particular audience to such an exhibition was not required under the statute, and taking judicial notice of the fact that screeching tires produces tension in drivers). In our opinion, to require the Commonwealth to prove that an audience or crowd was deliberately assembled would frustrate the purpose of the statute. It is precisely those drivers or pedestrians who do not anticipate such an exhibition who are most affected by it. Thus, we find that Ward's argument that the statute prohibits this conduct only when an audience is purposefully assembled, is meritless.

In his second issue, Ward claims that the Commonwealth's evidence was insufficient to prove his guilt beyond

obtained, and consequences of any particular construction). The Act of January 8, 1960, P.L. (1959) 2118, Sec. 3, 75 P.S. § 1041, amending The Vehicle Code of April 29, 1959, P.L. 58, 75 P.S. § 101 et seq., made automobile racing on a highway an independent crime punishable by fine or imprisonment or both up to $500 and three years in jail. In 1960 a new section was added to the statute, section 1041, entitled Speed Contests and Drag Races Prohibited, and provided: "It shall be unlawful for any person to operate a vehicle upon any highway in a speed contest, including those commonly known as drag races, whether from a standing start or otherwise, over a measured or unmeasured distance, the object of which is to better or defeat one or more contestants on the basis of elapsed time, superior performance or speed." In 1976, the statute was amended, 1976, June 17, P.L. 162, No. 81, § 1, effective July 1, 1977. The amendment added definitions of the terms "race" and "drag race," and added as well the language which is the subject of the instant case. Our interpretation of the legislature's intent in prohibiting such exhibitions of speed or acceleration is consistent with the remaining provisions in section 3367, as well as the other provisions enacted under subchapter F, entitled "Speed Restrictions." These provisions include § 3361, Driving vehicle at safe speed; § 3362, Maximum speed limits; § 3363, Alteration of maximum limits, § 3364, Minimum speed regulation, § 3365, Special speed limitations, § 3366, Charging speed violations, and § 3368, Speed timing devices.

a reasonable doubt. Our standard of review is well established. We must view the evidence in the light most favorable to the Commonwealth, as verdict winner, and, drawing all reasonable inferences therefrom favorable to the Commonwealth, determine if the evidence is sufficient to enable the trier of fact to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Griscavage*, 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986). Moreover, when determining the credibility of witnesses and the weight to be afforded the evidence, the trier of fact is free to believe all, part, or none of the evidence. *Id.* It is only where the evidence is so inconsistent and unreliable, such that the verdict is based upon conjecture, that the verdict will be overturned. *Commonwealth v. King*, 287 Pa.Super. 105, 429 A.2d 1121 (1981).

■ The evidence indicates that this incident occurred as Ward left a shopping center parking lot and turned onto a public highway. Shoppers were in the parking lot area and the parking lot was three quarters full. Officer O'Shea testified that he heard tires squealing, and his attention was drawn to Ward, who was backing out of his parking space in the shopping center parking lot. Officer O'Shea testified that Ward stopped at the stop sign at the parking lot exit and proceeded onto Route 30, at which time Ward's tires squealed again. Officer O'Shea pointed out that "[a]t the time of the incident there [were] a few other vehicles on Route 30 ... It wasn't a congested time of day."

Viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, we conclude that the evidence was insufficient to support Ward's conviction of the offense of exhibition of speed or acceleration. Spinning or squealing tires alone is insufficient to support a conviction under this statute. The record is devoid of any evidence other than the fact that Ward's tires squealed. There is nothing in the record indicating rapid acceleration, or speed in a short distance travelled. Squealing tires alone does not necessarily lead to the conclusion that one is exhibiting speed or acceleration.

Moreover, we point out that road conditions, especially a loose gravel paving, or tire conditions, may cause inadvertent squealing. We conclude that evidence of spinning or squealing tires, without more, is insufficient to support a conviction under this statute.[3]

Reversed.

3. In a California decision construing a similar statute, the California appellate court upheld the defendant's conviction over a sufficiency of the evidence claim. In *People v. Grier*, 38 Cal.Rptr. 11, 226 Cal.App.2d 360 (1964), the defendant argued that the evidence was insufficient to show that he was engaged in a speed contest or exhibition of speed in violation of section 23109 of the California Vehicle Code. The California statute, which contains language identical to that of our own statute, provides: "No person shall engage in any motor vehicle speed contest or exhibition of speed on a highway ..."

The police officer testified that he observed Grier driving out of a private driveway onto the public street, at which time the tires "peeled, screaming quite loud." 38 Cal.Rptr. at 12, 226 Cal.App.2d at 362. The officer pursued Grier, and when Grier stopped and made a right turn onto a boulevard, the officer testified that Grier's "automobile tires again peeled, screaming quite loud." *Id.* The officer stated that Grier attained a speed of approximately 40 miles per hour by continuous acceleration within a distance of about three-quarters of a block, and that there were several vehicles behind Grier's car.

Grier testified in his own defense, stating that he possibly slipped on some sand or gravel as he left the driveway, and that when he made a right turn onto the boulevard he heard his tires squealing, but he was not driving in excess of 40 miles per hour at the time. On appeal, Grier argued that there was no observer present and therefore the evidence was insufficient to hold him in violation of the statute.

The court, quoting the Appellate Department of the Superior Court, stated:

The statute ... covers much more than "drag" races and similar "contests." Clearly such an "exhibition" applies to appellant's driving prior to his arrest.... Such an exhibition was dangerous and imprudent, against which the charging statute inveighed.... No particular type of audience to such an exhibition can nor need be implied in the statute. It was exhibition of speed on a highway, as much as if it had been a prearranged affair with an invited or selected audience of observers.

38 Cal.Rptr. at 13, 226 Cal.App.2d at 364. The court held that excessive acceleration of an automobile on a highway in a highly developed and populaied area in such a manner as to cause the tires to scream loudly and to lose traction on a highway constituted an "exhibition of speed" in violation of the statute. *Id.*

This case differs only slightly from the one before us. In *Grier*, there was evidence indicating that the driver had in fact engaged in rapid acceleration. This was easily inferred from the police officer's testimony that Grier went from a stop to 40 miles per hour within

three-quarters of block. In the case before us, evidence of rapid acceleration or speed is conspicuously absent.