J-A06017-26

2026 PA Super 71

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA A. RIVERA | : | No. 547 WDA 2025 |

Appeal from the Order Entered April 25, 2025
In the Court of Common Pleas of Butler County Criminal Division at
No(s):  CP-10-CR-0001622-2023

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

OPINION BY MURRAY, J.:                    **FILED:  April 10, 2026**

In this vehicular homicide case, the Commonwealth of Pennsylvania appeals from the trial court's interlocutory order that decided evidentiary issues raised in Joshua A. Rivera's (Rivera) pretrial motions *in limine*, and precluded the Commonwealth from introducing certain items into evidence.[1] For the reasons that follow, we affirm in part and reverse in part, and remand for further proceedings.

The trial court summarized the evidence presented at Rivera's preliminary hearing as follows:

The preliminary hearing occurred on December 14, 2023, and the Commonwealth presented three witnesses, the autopsy report,

---

[1] The Commonwealth complied with Pa.R.A.P. 311(d), as it "certifie[d] in the notice of appeal that the order will terminate or substantially handicap the prosecution." **Id.**; **see also Commonwealth v. Matis**, 710 A.2d 12, 17 (Pa. 1998) ("[T]he Commonwealth may appeal a pre-trial order granting a motion *in limine* to exclude evidence that has the effect of terminating or substantially handicapping the prosecution.").

and [Rivera's] certified driving record.[2] … Officer William Dobson [(Officer Dobson)] testified that he has been a police officer with the Butler Township Police Department for about 8 years[,] and that he was dispatched to the scene of an accident on October 19, 2023, at 3:37 p.m. [N.T. (preliminary hearing), 12/14/23,] at 48. Upon arrival at 3:44 p.m., he saw the [seriously injured, fifteen-year-old victim, A.L. (the victim),] lying in the middle of Dutchtown Road near the intersection with Sugar Creek Drive. **Id.** at 50. Dutchtown Road is a two[-]lane road … with no lines on the pavement. [**Id.** at 49.] The speed limit is 35 [miles per hour (mph or m.p.h.)]. **Id.** … [Officer Dobson] did not see any skid marks on the road …. **Id.** at 68. [Officer Dobson] observed pieces of a bumper from a [white] KIA sedan on the roadway that [law enforcement] tracked back to [Rivera,] who owned the car. **Id.** at 52-53. [Law enforcement eventually located Rivera's abandoned vehicle, which had significant] front bumper damage, … a few miles from the scene later that day.[3] [**Id.** at 53; **see also id.** at 54 (Officer Dobson testifying Rivera was the registered owner of the vehicle). Rivera] was apprehended 3 days later but did not give [] a statement. [**Id.** at 56-57.]

* * *

The Commonwealth also called Brett Decker [(Mr. Decker),] an eyewitness to the accident, at the preliminary hearing. Mr.

---

[2] It is undisputed that at the time of the incident, Rivera's driver's license was suspended due to a pending charge of driving under the influence (DUI) of controlled substances. **See** Rule 1925 Opinion, 7/25/25, at 1 (unpaginated); Appellee's Brief at 4 (Rivera conceding his driver's license was suspended); N.T. (preliminary hearing), 12/14/23, at 57-59, Commonwealth Ex. 1. The trial court precluded the Commonwealth from introducing any evidence or reference regarding this pending charge. **See** Motion *in Limine* Order, 4/25/25, at 1 (unpaginated) (granting, "with the consent of the Commonwealth," Rivera's motion *in limine* to exclude "the fact that [Rivera] had a DUI charge pending when this event occurred and/or that he was out on bond at the time or under supervision."); **see also** N.T. (motion *in limine* hearing), 3/24/25, at 122, 124-25.

[3] The trial court stated that "a police officer saw [Rivera's] parked car within minutes of this incident and saw him get out of the car, lock it and flee into the woods. The car was impounded …." Rule 1925 Opinion, 7/25/25, at 4 (unpaginated).

Decker testified that he was walking with his wife and youngest son, who was in a stroller, and standing on Dutchtown Road … when he saw the accident. [*Id.*] at 7-8. He testified that it was "a beautiful day for a walk, [and] the sun was shining …" when he saw the victim riding his electric bike, traveling on the right side of Dutchtown Road, coming towards [Mr. Decker] …. [*Id.* at 8, 9.] Then, a "car came out of nowhere" and struck the victim from behind …. *Id.* at 9-10. Mr. Decker[, describing the speed of the vehicle, stated it] "felt like it was a missile coming." [*Id.* at 10.]

… [Mr. Decker testified that] "it was traveling fast … I would say 80 [mph] or so." *Id.*[; *see also id.* at 37, 38 (Mr. Decker stating, on cross-examination, that although he is not "an expert" in providing speed estimations, he "spend[s] a lot of time[] driving.").] … [Mr. Decker was approximately 10 to 15 feet away from the victim when the vehicle struck him, whereupon the victim] was thrown in the air, bounced off the car and was flung forward, while the car traveled underneath the victim as he flew in the air. *Id.* [at 10-11. Mr. Decker stated that the victim] landed on the roadway and the car came to a complete stop about 10 to 15 feet past where [the victim's] body came to rest. *Id.* [at 11; *see also id.* at 32 (Mr. Decker estimating the victim was propelled "probably 75, 80 feet" from the point of impact).]

* * *

[Mr. Decker testified that the] driver came out of the car and was acting erratic. [Rivera] said, "Oh, my God. Oh, my God. I'm so sorry. I'm so sorry." *Id.* at 14[; *see also id.* at 39 (Mr. Decker stating he did not see any other occupants in the car). Mr. Decker testified that Rivera] also … yelled for us to call 911. [*Id.* at 14.] … Mr. Decker asked his wife to call 911. [*Id.* at 15.]

* * *

[While Mr. Decker was rendering aid to the victim, who had a visible head injury, Mr. Decker] "heard the car tires squealing again and the car was taking off at a high rate of speed." *Id.* at [15,] 17. The driver did not identify himself at the scene. [*Id.* at 17. In open court during the preliminary hearing,] Mr. Decker identified [Rivera] as the driver of the vehicle that day…. *Id.* at 18.

Mr. Decker further explained that the victim was to his left as he was walking, and the victim was riding in the same direction as [Rivera's vehicle. *Id.* at 21. Immediately before the impact, Mr. Decker noticed that the victim "]was approaching the middle [of Dutchtown Road] because … as you approach your turn, you start drifting that way." *Id.* [] "But [the victim] had not passed the center of the road. He was still on that side of the road." *Id.* The victim was riding his electric bike down the hill, which was not steep. *Id.* at 23. …

[Mr. Decker further explained that the] top of the hill on Dutchtown Road is about … 600-1[,]000 feet or so from [the point of] impact. *Id.* at 25. Mr. Decker added that[, immediately prior to the impact,] he noticed the car make a lateral move, as though [attempting] to go around the bike…. *Id.* at 26. … [Mr. Decker stated that the car] "appeared to be accelerating to get around [the victim]." *Id.*[; *see also id.* at 12 (Mr. Decker testifying that he did not believe the driver applied the car's brakes prior to impact).] … Dutchtown Road is a straight road from the top of the hill to the point of impact. *Id.* at 39.

Memorandum Opinion and Order, 8/29/24, at 7-10 (unpaginated) (footnotes added). Additionally, the trial court stated that "[Rivera] had previously travelled on Dutchtown Road[.]" *Id.* at 11 (unpaginated); *see also* N.T. (preliminary hearing), 12/14/23, at 36 (Mr. Decker testifying at the preliminary hearing that "[o]ne of [his] neighbors reported that she had witnessed a white sedan in that area pass her at high rates of speed and it looked like it was racing another car.").[4]

The Commonwealth charged Rivera, via criminal complaint filed on October 20, 2023, with one count each of involuntary manslaughter, 18

---

[4] Rivera's counsel did not raise a hearsay objection to Mr. Decker's testimony regarding his neighbor's statement.

Pa.C.S.A. § 2504(a); accidents involving death or personal injury, 75 Pa.C.S.A. § 3742(a); aggravated assault by vehicle, *id.* § 3732.1(a); accidents involving death or injury while not licensed, *id.* § 3742.1(a)(1); homicide by vehicle, *id.* § 3732(a); accident involving damage to attended vehicle, *id.* § 3743(a); reckless driving, *id.* § 3736(a); failure to notify police of accident/injury or death, *id.* § 3746(a)(1); driving while license is suspended – DUI-related, *id.* § 1543(b)(1)(i); and driving at safe speed, *id.* § 3361.[5]

Law enforcement submitted an application for a search warrant regarding Rivera's impounded vehicle, seeking to obtain "[i]tems such as alcohol, illicit, prescribed or over[-]the[-]counter drugs[.]" Affidavit of Probable Cause, 12/15/23, at 3.[6] The affidavit of probable cause stated that "[o]fficers on scene noted a freshly burned marijuana joint laying in the grass

---

[5] Notably, at no time did the Commonwealth charge Rivera with DUI.

[6] The warrant application, dated October 20, 2023, was not filed until December 15, 2023.

in close proximity to this crash[.]"[7]  *Id.* at 2.  A magisterial district judge (MDJ) granted the search warrant application.[8]

Law enforcement executed the search warrant for Rivera's impounded vehicle on November 11, 2023, *i.e.*, approximately three weeks after the incident.  Police inventoried the items seized and documented the locations in which the items were found.  The inventory, filed of record, stated that police discovered a suspected "baggie of marijuana" behind the driver's seat. Application for Search Warrant, 12/15/23, at 6 (unpaginated) (inventory). Police also found rolling papers and unidentified pills inside both the glove box

---

[7] Law enforcement collected the partially-burnt marijuana joint and preserved it for evidence.  *See* N.T., 3/24/25, Commonwealth Exhibits 2-5 (pictures of the evidence, which we hereinafter refer to as "the joint" or "marijuana cigarette").  At the hearing on Rivera's motion *in limine*, the prosecutor explained that police found the joint "after the fact [of the incident], lying right where [Rivera's] vehicle was stopped.  Where Mr. Decker said that [] Rivera got out of his car."  *Id.* at 58.

Additionally, the Commonwealth conceded "there is no lab report showing that the joint actually is marijuana[.]"  *Id.* at 74.  Rather, the Commonwealth explained that it is "relying on *Commonwealth v. Duncan*[, 314 A.3d 556 (Pa. Super. 2024),]" to establish that the joint contained marijuana.  N.T., 3/24/25, at 58; *Duncan*, 314 A.3d at 567 ("In the context of drug possession cases, it is well settled that the existence of narcotic drugs does not have to be proved by chemical analysis and may be proved either by direct or circumstantial evidence[,]" which may include "testimony of an odor informing [law enforcement's] conclusion as to the presence of [drug use.]" (citation and internal quotation marks omitted)).

[8] At no time did Rivera challenge the validity of the search warrant or file a motion to suppress evidence.

- 6 -

and center console, as well as an unopened alcoholic beverage located in the vehicle's trunk. **Id.**

Rivera's preliminary hearing occurred on December 14, 2023. Mr. Decker and Officer Dobson testified as described above. Following the close of evidence, the MDJ considered argument from the parties regarding whether the Commonwealth had proven a *prima facie* case. **See** N.T., 12/14/23, at 68-75. The MDJ bound all charges over for court. **Id.** at 75.

On March 6, 2024, Rivera filed an informal request for discovery pursuant to Pa.R.Crim.P. 573. The Commonwealth subsequently disclosed documents to the defense, which included police statements given by two individuals who resided on Dutchtown Road at the time of the incident: Mr. Lennon and Michael Pritschman (Mr. Pritschman).[9] As the trial court explained,

> [t]he Commonwealth is [] expected to call [] Mr. Lennon as a lay witness at trial to testify to his observations minutes after the crash. [Mr. Lennon] did not see the crash. While in his front yard[,] which was a few miles from the crash site, [Mr. Lennon] observed a white car dragging parts of its front end underneath, while the vehicle traveled at a "high rate of speed" and ran a stop sign at the intersection of Dutchtown Road and Mushrush Road.

Motion *in Limine* Order, 4/25/25, at 10 (unpaginated) (emphasis omitted);

**see also** N.T., 3/24/25, at 93 (the prosecutor stating at the motion *in limine*

---

[9] Mr. Lennon's first name is not revealed in the record. Moreover, the record does not contain the police statements of Mr. Lennon and Mr. Pritschman, neither of whom testified at the preliminary hearing. However, it is undisputed that their respective statements were passed in discovery.

- 7 -

hearing that Mr. Lennon "did not put a speed" estimation of the vehicle's rate of travel).

> Regarding Mr. Pritschman, the trial court explained that he

> is expected to testify that he was in his backyard, which is along Dutchtown [R]oad at the top of the hill, and that he saw a car for about 2-3 seconds out of the corner of his eye, before the crash, but could not determine its color, and that he heard the vehicle passing more than he saw anything. [**See** N.T., 3/24/25, at 98. Mr. Pritschman] estimated 70 mph or more as the speed of the vehicle at the top of the hill. **See id.** at 98-99. [Mr. Pritschman] did not get a clear view of the vehicle. He heard more than saw the vehicle.

Motion *in Limine* Order, 4/25/25, at 9-10 (unpaginated) (internal quotation marks omitted; citation modified); **see also** N.T., 3/24/25, at 92 (the prosecutor explaining that Mr. Pritschman "saw the vehicle just mere seconds before [the victim] was struck").

Pertinent to this appeal, on February 23, 2024, the Commonwealth filed a motion (Motion to Amend) seeking to amend the information to add one count of third-degree murder,[10] a first-degree felony with a maximum potential sentence of 20 to 40 years' imprisonment. Motion to Amend, 2/23/24, at 1 (unpaginated); **see also** Pa.R.Crim.P. 564 (providing that a "court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events

---

[10] 18 Pa.C.S.A. § 2502(c).

and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced.").[11]

On March 13, 2024, the Commonwealth filed another application for a search warrant, seeking to obtain data and postings associated with Rivera's Facebook online social media account. An MDJ granted the search warrant. The Commonwealth thereafter obtained a video Rivera had posted to his Facebook account, which we discuss *infra*.

On July 30, 2024, the trial court conducted a hearing on the Commonwealth's Motion to Amend. At the hearing, the transcript from Rivera's preliminary hearing was admitted into evidence. **See** N.T. (motion to amend hearing), 7/30/24, at 42-43, Plaintiff's Ex. 1. The Commonwealth elected to rely solely upon the evidence presented at the preliminary hearing, and presented no additional evidence. **Id.** at 9.

On August 16, 2024, Rivera, through his Public Defender counsel, filed a Motion to Quash Commonwealth's Motion to Amend/Motion for Writ of *Habeas Corpus* (*Habeas* Motion). Rivera asserted the Commonwealth had failed to present a *prima facie* case "to show malice as an element" to support

---

[11] In the Motion to Amend, the Commonwealth also gave Rivera notice of its intent to seek application of the sentencing enhancements pursuant to 75 Pa.C.S.A. §§ 3732(b) and 3732.1(b) (governing sentencing enhancements for persons who have a prior conviction of driving while operating privilege is suspended or revoked, and who are also convicted of homicide by vehicle or aggravated assault by vehicle, respectively).

amending the information to add the charge of third-degree murder.[12] *Habeas Motion*, 8/16/24, ¶ 33.

On August 29, 2024, the trial court issued a thorough memorandum opinion and order in which it (1) granted the Commonwealth's Motion to Amend;[13] and (2) denied Rivera's *Habeas* Motion.

In granting the Motion to Amend, the trial court determined that (1) "[t]he proposed amendment is based … on the evidence and factual scenario presented at the preliminary hearing"; (2) "the description of the [original] charges will be unchanged by the amendment"; and (3) "there is no showing

---

[12] "Third-degree murder is a homicide that the Commonwealth must prove was committed with malice, but … it need not prove or address the presence or absence of an intent to kill." ***Commonwealth v. Wellman***, 344 A.3d 13, 23 (Pa. Super. 2025). Our Supreme Court has stated that "malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." ***Commonwealth v. Packer***, 168 A.3d 161, 168 (Pa. 2017); ***see also id.*** at 170 (stating that "[i]n the DUI context, this Court has held that the decision to drive while under the influence of alcohol and/or a controlled substance does not, **standing alone**, constitute malice." (emphasis added; citation omitted)). The defendant's conduct must be such that "one could reasonably anticipate death or serious bodily injury would likely and logically result." ***Commonwealth v. Kling***, 731 A.2d 145, 148 (Pa. Super. 1999) (citation omitted); ***see also Commonwealth v. Akhmedov***, 216 A.3d 307, 316 (Pa. Super. 2019) (*en banc*) ("Malice is more than ordinary recklessness"). "In view of this heightened *mens rea*, motor vehicle crashes seldom give rise to proof of the malice needed to sustain a conviction for third[-]degree murder …." ***Kling***, 731 A.2d at 148. Pertinently, "[m]alice may be inferred by considering the totality of the circumstances." ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1219 (Pa. Super. 2011).

[13] On September 4, 2024, the Commonwealth filed an amended information charging Rivera with third-degree murder.

of prejudice [to Rivera], other than adding another charge with a more severe penalty[.]"  Memorandum Opinion and Order, 8/29/24, at 2 (unpaginated); *see also* Pa.R.Crim.P. 564, **supra**.

In denying Rivera's *Habeas* Motion, the trial court found that "the Commonwealth has made out a *prima facie* case for malice to support the amended count of murder in the third degree."  Memorandum Opinion and Order, 8/29/24, at 11 (unpaginated).  **But see also id.** (stating that "[w]hile the evidence presented by the Commonwealth at the preliminary hearing on malice is not overwhelming, that is not the test the court must apply.").

On February 21, 2025, Rivera filed lengthy motions *in limine*.  In relevant part, Rivera sought preclusion of the following evidence:

1) "[V]ideo and images that have been purported to come from [Rivera's] Facebook page" (Facebook video), which depicted "an unknown person, in an unknown vehicle, going over 100 m.p.h., on an unknown roadway[.]"[14]  Motion *in Limine*, 2/21/25, ¶¶ 40, 42;

_____

[14] The trial court described the Facebook video as follows:

The Commonwealth propos[ed] to introduce [a] 30 second video …, purported[ly taken from Rivera's] Facebook page, made prior to this incident, [of Rivera] allegedly filming himself driving a different car than the one involved in this incident, [depicting] a speedometer showing [that the vehicle was] driving at 130 mph, [and the driver can be heard] saying: "This is how you [] drive[,] Banner! Like that, bitch!"  [N.T., 3/24/25, Commonwealth Ex. 1 (Facebook video).]

Motion *in Limine* Order, 4/25/25, at 5-6 (unpaginated) (some punctuation modified).  The driver is not depicted at any point in the Facebook video, which is undated.  **See** N.T., 3/24/25, Exhibit 1.

2) Lay opinion testimony from Mr. Decker, Mr. Pritschman, and Mr. Lennon regarding the speed of Rivera's vehicle at the time of the incident. *Id.* ¶¶ 72-109; and

3) Any evidence that may suggest Rivera was under the influence of controlled substances at the relevant time. *Id.* ¶¶ 21-38.

Expounding upon the third item listed above, Rivera asserted that

[t]he Commonwealth has possible evidence, following an interior search of [Rivera's] vehicle conducted by Officer Dobson [on November 11, 2023,] which includes prescription medications, rolling papers, pills, a suspected baggie of marijuana, and an unopened [alcoholic beverage] located in the trunk of the vehicle. The Commonwealth [also] has [police] body camera video evidence … that tend[s] to show that [Rivera] was addicted to narcotics previously or relapsed following this accident.

* * *

[Rivera] specifically requests that the [c]ourt prohibit the Commonwealth from utilizing or making any reference or referral to any drug usage, possession, … "suspected marijuana cigarette," or any other statement regarding relapse or addiction by [Rivera].

*Id.* ¶¶ 29-30, 38 (formatting and some punctuation modified).

The Commonwealth filed a response to the motions *in limine* on March 20, 2025. Regarding the drug evidence police found at the scene and in Rivera's vehicle, the Commonwealth asserted as follows:

The Commonwealth intends to present law enforcement testimony from [Officer Dobson], who is extremely familiar with [marijuana and its odor], that the [joint found at the scene did], in fact, [contain] marijuana, and that it was a very large marijuana cigarette.

The Commonwealth further intends to introduce at least one photo of the marijuana cigarette, and maybe even the cigarette itself, as [one of the police officers who responded to the scene of the accident], at roughly the 13 minute mark of his bodycam

- 12 -

video, stated it smelled strongly of marijuana at the time of the crash …. Officer Dobson confirmed the marijuana smell once he was directed to where the marijuana cigarette was located at the crash scene. Additionally, the eyewitnesses to the crash, [*i.e.*, Mr. Decker and his wife], stated that they smelled an odor of marijuana emanating from [Rivera] after the crash.

Commonwealth's Response to Defense Motion *in Limine*, 3/20/25, at 2 (some capitalization and punctuation modified).

On March 24, 2025, the trial court conducted an *in camera* hearing on the motions *in limine* (motion *in limine* hearing). The Commonwealth announced its intention to introduce into evidence at trial (1) the above-described police body camera video (the body cam video), in which individuals can be heard stating that they smelled the odor of marijuana at the scene;[15] (2) the drug paraphernalia and baggie containing suspected marijuana seized from Rivera's vehicle; and (3) the joint found at the scene. ***See*** N.T., 3/24/25, at 52-53, 57, 66-68, Commonwealth Ex. 1. Regarding the joint, the prosecutor stated that law enforcement had performed a forensic test of DNA contained on the joint, uploaded the test results into the Combined DNA Index System (CODIS),[16] and received a "CODIS hit that [] Rivera is the only DNA

_____

[15] At the motion *in limine* hearing, the Commonwealth played the body cam video for the trial court. ***See*** N.T., 3/24/25, at 66-68, Commonwealth Exhibit 1.

[16] As our Supreme Court has explained, CODIS is the acronym used to describe the FBI's tool that "blends forensic science and computer technology to enable federal, state, and local forensic laboratories to exchange and compare DNA profiles electronically, thereby linking serial violent crimes to
*(Footnote Continued Next Page)*

hit that popped up … when [law enforcement] ran it through [the CODIS] repository of known individuals." *Id.* at 56.

Although the Commonwealth conceded it did not charge Rivera with DUI or any drug offenses, *see id.* at 52-53, it asserted the drug evidence was nonetheless relevant

> [w]hen it comes to [the charge of third-degree] murder…. [Rivera] was driving -- along with the totality of the circumstances, it's just one factor. I don't believe [that] just because [the Commonwealth] didn't [charge Rivera with] DUI[,] we can't introduce [evidence] that he [was] smoking a marijuana joint while driving at a high rate of speed.

*Id.* at 55; *see also id.* (the prosecutor asserting, "I believe this is an important element to show that [Rivera was] manifesting an indifference to society and what his actions were that day"). The prosecutor further announced the Commonwealth's intention to call witnesses at trial who "are going to testify that [Rivera] smelled like marijuana," and that the joint found at the scene "was completely reeking of marijuana just being within the vicinity of it[.]" *Id.* at 54.

Rivera countered that admission of the drug evidence was improper, asserting as follows:

> Our objection is that … if [the Commonwealth is] not going to present [evidence of Rivera's] impairment, … then presentation of [the drug] evidence, … there is a mere appearance. [The Commonwealth is] going to … say [that the joint] came from [Rivera] and they are going to show a bag of marijuana [found

---

each other and to known offenders." ***Commonwealth v. Walker***, 350 A.3d 54, 56 n.1 (Pa. 2026) (citation and brackets omitted).

inside Rivera's vehicle], when impairment is not [at issue] in this case and when … there is no evidence [that Rivera] was smoking [marijuana]. Maybe it's mere possession. But presented how [the Commonwealth] want[s] to present [the drug evidence, it] gives kind of the wink and the nod that this may have been a DUI as well, even though [DUI was] not charged ….

*Id.* at 63-64 (some punctuation modified).

At the motion *in limine* hearing, the trial court then considered argument from the parties regarding the admissibility of the proposed lay opinion testimony from Mr. Lennon, Mr. Pritschman, Mr. Decker, and Mr. Decker's wife, Rachel Decker (Mrs. Decker). ***See id.*** at 87-99. Regarding Mrs. Decker, who did not testify at the preliminary hearing, the prosecutor maintained that she "is going to testify that she watched [] Rivera hop in his car [after the impact], burn rubber and leave like a bat out of hell at a high rate of speed." *Id.* at 93. However, the prosecutor explained that Mrs. Decker "is not putting an actual miles per hour number on the vehicle." *Id.* at 96.

Finally, the Commonwealth played the Facebook video for the trial court. *Id.* at 85, Commonwealth Ex. 1. The prosecutor maintained that "[Rivera] is speaking in [the Facebook] video and we have law enforcement who can testify that they are familiar with his voice …." *Id.* at 78; ***see also id.*** at 79-80 (the prosecutor asserting there was other evidence, discussed *infra*, that tied Rivera to the Facebook video). However, the prosecutor conceded that law enforcement did not know when the Facebook video was created:

[The Facebook video] was deleted, [after law enforcement] pulled it off of the internet. I don't believe we have a specific date. … We turned it over in discovery and then when I checked [Rivera's

- 15 -

Facebook profile] last, [the Facebook video had] been blocked and delete[d].

*Id.* at 83.

Rivera countered that the Facebook video must be excluded, as the Commonwealth failed to authenticate it. *Id.* at 76. Rivera further argued that any probative value the Facebook video may have is heavily outweighed by its potential for unfair prejudice:

> I just don't think that [the Facebook] video can be authenticated and [it] is extremely prejudicial when the issue of speed is … pretty much at issue for the jury. Just because [Rivera] posted a video on Facebook doesn't mean that's what he did [on the] day [of the incident].

*Id.*; *see also id.* at 86 (Rivera asserting the Facebook video "is highly prejudicial on a couple of fronts and nobody can say that is [] Rivera driving.").[17]

By a comprehensive order entered on April 25, 2025 (Motion *in Limine* Order), the trial court decided Rivera's motions *in limine*. The court excluded the Facebook video, reasoning as follows:

> Assuming that the Commonwealth can authenticate the [Facebook] video under Pa.R.E. [] 901,[18] and prove that [Rivera]

---

[17] Rivera's counsel also pointed out that Rivera has been continuously incarcerated since three days after the incident and asserted Rivera "didn't have access to Facebook, [and] didn't delete anything[.]" N.T., 3/24/25, at 85.

[18] Rule 901 mandates that, "[u]nless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent
*(Footnote Continued Next Page)*

is the driver in the video, the video itself is highly prejudicial and has low probative value, in part, because the time of its recording cannot be established to create an evidentiary time link between the behavior on the [Facebook] video and [Rivera's] alleged driving at the time of this incident.

Given the identification issues [regarding the Facebook video], and the low probative value [of this evidence] in comparison to the prejudicial [effect, Rivera's] motion [*in limine* to exclude the Facebook video is granted].

Motion *in Limine* Order, 4/25/25, at 5-6 (unpaginated) (footnote added).

The trial court denied Rivera's motion *in limine* to exclude the joint. **Id.** at 4 (unpaginated) (declining to exclude the joint "and the odor at the crime scene of [marijuana,] whether emanating from [Rivera] and/or the alleged marijuana cigarette, and/or its identification as marijuana so long as a proper foundation for that knowledge has been established thereto." (citing **Duncan**, 314 A.3d at 566-67)).[19] However, the trial court excluded the evidence law enforcement seized during the search of Rivera's vehicle. **Id.** at 4-5 (unpaginated).

In the Motion *in Limine* Order, the trial court further stated that

_____

claims it is." Pa.R.E. 901(a); **see also Commonwealth v. Serge**, 896 A.2d 1170, 1177 (Pa. 2006) ("Demonstrative evidence such as photographs, motion pictures, diagrams, and models have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict." (citation omitted)); Pa.R.E. 901(b)(11) (governing authentication of digital evidence).

[19] The trial court granted Rivera's motion *in limine* to exclude any evidence related to forensic DNA analysis of the marijuana cigarette. **See** Motion *in Limine* Order, 4/25/25, at 4 (unpaginated). The Commonwealth does not challenge this ruling on appeal.

- 17 -

the defense motion *in limine* to exclude the audio recording portion from police body cam[ video] regarding the alleged marijuana cigarette [found] at the scene, and/or comments made regarding whether [Rivera] was impaired from it, are granted. Therefore, the Commonwealth is prohibited from playing the audio portion of [the body cam video] in direct examination in its case-in-chief.[20]

*Id.* at 5 (unpaginated) (footnote added; emphasis omitted; some capitalization modified). Finally, as we elaborate *infra*, the trial court imposed limitations upon the proposed lay testimonies of Mr. Decker, Mrs. Decker, Mr. Lennon, and Mr. Pritschman. *See id.* at 6-10 (unpaginated).

On May 1, 2025, the Commonwealth timely filed a notice of appeal that included its Pa.R.A.P. 311(d) certification. The Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth presents five issues for our review:

I.   Whether the trial court issued conflicting rulings in [its] April 25, 2025, [Motion *in Limine* Order] versus [its] August 29, 2024, memorandum, resulting in [an] abuse of discretion, and subsequently misappl[ied] the law in the April 25, 2025, [Order] by initially citing case law provide[d] by… the Commonwealth on August 14, 2024, in favor of the Commonwealth's [Motion to Amend] to add the charge of murder of the third degree, and denying a *habeas corpus* challenge, and confirming that eyewitnesses can testify about their observations of vehicles travel[]ing at high speeds in the August 29, 2024, opinion, and then, in its April 25, 2025, [Motion *in Limine* Order], prohibiting four eyewitnesses to [Rivera's] dangerous and reckless driving just before, during, and after the incident from fully testifying to what they saw as far as [Rivera's] vehicle travelling at a "high rate of speed" driving "like a missile" and leaving the scene like a "bat out of hell" on October 19, 2023?

_____

[20] The trial court did not exclude the video portion of the body cam video.

- 18 -

II. Whether the trial court committed legal error and abused its discretion in its April 25, 2025[, Motion *in Limine* Order] by prohibiting the introduction at trial of rolling papers and a suspected baggie of marijuana lawfully recovered from [Rivera's] vehicle, when the record was incorrectly cited by the trial court that the items were all located in the trunk of [Rivera's] vehicle, and when the record does not support the trial court's findings, as the trial court directs attention, on its own, to the search warrant issued on December 15, 2023, for [Rivera's] car, where the inventory from that search warrant, filed of record on December 15, 2023, described where every item was located?

III. Whether the trial court committed legal error and abused its discretion by issuing unsolicited relevancy rulings in the April 25, 2025, [Motion *in Limine* Order, which are] not supported by the record, by stating that the rolling papers and baggie of suspected marijuana were not relevant, and reciting incorrect legal principles such as the items were not "within the reach of the defendant" [or] "within the reach of the driver," and stating that there was a gap in time between the incident and the search [of Rivera's vehicle,] despite the vehicle being seized on October 19, 2023, and [the fact that the] items [found therein were] not disturbed until the search warrant was executed, and items [were] lawfully recovered from [Rivera's] vehicle, and [where the trial court did] not giv[e] the Commonwealth the opportunity to argue the relevancy points, or to address the incorrect legal points that the court relied upon for the first time in its April 25, 2025, [Motion *in Limine* Order], prohibiting the introduction at trial of the baggie of marijuana and rolling papers?

IV. Whether the trial court committed error and abused its discretion by *sua sponte*, in its April 25, 2025, [Motion *in Limine* Order], prohibiting [the Commonwealth from introducing into evidence] the audio recording portion of [the body cam video], despite that request not being before the trial court?

V. Whether the trial court abused its discretion by prohibiting the introduction at trial of [Pa.R.E.] 404(b) evidence of [Rivera] video-recording himself driving at 130 miles per hour, when the proffer was to establish at trial lack of

accident, [and] when the proffer showed that the undated [Facebook] video was still part of [Rivera's] postings on his Facebook page on the date of the October 19, 2023, incident, and that the [Facebook] video was subsequently deleted from [Rivera's] Facebook page after [Rivera] received the 404(b) notice, which points to consciousness of guilt and lack of accident?

Commonwealth Brief at 4-5 (some capitalization and punctuation modified).

In reviewing the propriety of a trial court's ruling on a motion *in limine*, "we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Mitchell***, 902 A.2d 430, 455 (Pa. 2006). It is axiomatic that

the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion is not simply an error of judgment, but is an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality.

***Commonwealth v. Walters***, 323 A.3d 151, 157 (Pa. 2024) (internal citations omitted).

This Court has stated that

[a] finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

***Commonwealth v. Hall***, 345 A.3d 332, 336 (Pa. Super. 2025) (citation omitted).

- 20 -

In its first issue, the Commonwealth contends the trial court erred "by misapplying the law and reaching incorrect conclusions of law in the realm of eyewitness testimony involving speed and operation of a motor vehicle." Commonwealth Brief at 21. The Commonwealth points out that, in granting Rivera's motion *in limine* on this point, the trial court

> suppressed any and all eyewitness testimony that explains the manner in which [Rivera] was operating his vehicle, including, but not limited to: "he came out of nowhere," "travelled like a missile," travelled at a "high rate of speed," "fled the scene at a high rate of speed" and/or took off "like a bat out of hell."

*Id.* (some punctuation and quotation marks added). The Commonwealth complains it "has been forced to face trying its case in a vacuum regarding eyewitnesses in this case when that should not be the case." *Id.* at 14.

By means of background, we set forth the trial court's reasoning, in its Motion *in Limine* Order, pertaining to the Commonwealth's proffered lay opinion testimony:

> The defense submits that [Mr.] Decker and other lay witnesses called by the Commonwealth who will testify to speed … cannot so testify under applicable [Pennsylvania R]ules of [E]vidence, Rules 602, 701, and 702, as well as various cases addressing lay witness opinion testimony regarding a vehicle[']s speed. Some of these witnesses testified at the preliminary hearing, which was transcribed, and/or gave statements to law enforcement. A Pennsylvania State Police Accident Reconstruction Expert conducted an examination … of this incident, but was apparently unable to opine forensically on the speed of [Rivera's] vehicle.[21]

_____

[21] At the hearing on the Motion to Amend, the prosecutor stated that "the accident reconstruction did not determine a speed, because there were no tire marks or yaw marks on the road[.]" N.T., 7/30/24, at 11. The prosecutor

*(Footnote Continued Next Page)*

- 21 -

* * *

**Mr. Decker may testify to the vehicle's <u>numeric</u> speed estimate** so long as the Commonwealth lays the proper foundation. However, **Mr. Decker is prohibited from testifying with general characterizations of speed such as that it felt like a missile was coming, it came out of nowhere, and/or [was] traveling fast, etc.** Similarly, if [Mrs. Decker] is called to testify about speed, she is prohibited from giving general characterizations regarding speed like he took off like a bat out of hell, etc. [**Mrs. Decker**] **is similarly <u>limited to numeric speed estimates</u>** if a proper foundation is established first.

… [Regarding Mr. Pritschman, he] did not get a clear view of the vehicle. He heard, more than saw, the vehicle. [Mr. Pritschman's] observation was brief and partial. Based on the proffer, the court finds that his numeric lay opinion as to speed is too speculative given his limited ability to see the vehicle and [his statement] that he heard it more than saw it. [Rivera's] motion *in limine* is granted therefore as to Mr. P[r]itschman's lay opinion testimony as to the vehicle's speed.

… [Regarding Mr. Lennon, he is expected to testify that,] while in his front yard, which was a few miles from the crash site, he observed a white car dragging parts of its front end underneath, while the vehicle traveled at a "high rate of speed" and ran a stop sign at the intersection of Dutchtown Road and Mushrush Road. Accordingly, [**Rivera's**] **motion *in limine* is granted as to the phrase "high rate of speed." The proffer did not include any numeric estimation of speed testimony from** [**Mr. Lennon**]. [Rivera's] motion *in limine* is denied as to [Mr. Lennon's] testimony that the car ran a stop sign.

Motion *in Limine* Order, 4/25/25, at 6, 9-10 (unpaginated) (emphasis and footnote added; original emphasis omitted; some citations, punctuation, and paragraph formatting modified). Citing this Court's decision in the civil case,

---

clarified that the Commonwealth was not relying upon the accident reconstruction report in support of its case. *Id.* at 12.

*Kearns v. DeHaas*, 546 A.2d 1226 (Pa. Super. 1988), the trial court determined that "[n]on-numerical estimates by lay witnesses such as 'fast,' 'excessive,' *etc.* are not permitted." Motion *in Limine* Order, 4/25/25, at 7 (unpaginated) (quoting *Kearns*, 546 A.2d at 1234).

The Commonwealth argues that, under our jurisprudence,

[t]he standard is that an eyewitness to the defendant's driving is not limited to estimating the numeric speed of the vehicle. The eyewitness is permitted to elaborate and expound on what they saw, subject to a proper foundation being laid, and subject [to] cross-examination, of course.

Commonwealth Brief at 23 (some punctuation modified); *see also id.* at 24 (asserting eyewitnesses to a speeding vehicle "are not bound solely by numeric, sterilized terminology in a vacuum."). The Commonwealth maintains that, at trial, Mr. Decker, Mrs. Decker, Mr. Lennon, and Mr. Pritschman would each

have a foundation laid of their knowledge of driving at various speeds, driving at different speeds in their neighborhood, and differentiating between going too fast, versus slow, versus travelling at an appropriate speed.

*Id.* at 26. According to the Commonwealth,

it flies in the face of common sense not to allow eyewitnesses with the life experience of operating motor vehicles, and exposure to motor vehicles travelling in their highly residential neighborhood, to testify rationally on what they perceived.

*Id.* (some punctuation modified).

The Commonwealth posits that

the current state of the law involving testimony of reckless driving, conscious disregard for the safety of others, and malice regarding

the operation of a vehicle by a defendant charged with murder of the third degree, as a result of striking and killing someone with their vehicle, is set forth … in this Court's *en banc* decision in ***Commonwealth v. Peters***, [320 A.3d 1231 (Pa. Super. 2024) (*en banc*),[22] ***appeal granted***, 332 A.3d 27 (Pa. Jan. 6, 2025)].

Commonwealth Brief at 22 (footnote added; some capitalization and punctuation modified).

---

[22] In ***Peters***, a vehicular homicide case, we determined that the Commonwealth presented sufficient evidence to sustain the appellant's conviction by a jury of third-degree murder and aggravated assault, under the totality of the following circumstances: (1) the appellant consumed copious amounts of alcohol and then drove his vehicle, long distances on a highway, at speeds significantly in excess of the speed limit (reaching 115 mph); (2) the appellant exhibited sustained recklessness, and a conscious disregard for the safety of others, in his erratic and dangerous driving; (3) the appellant "had ample opportunity to reflect upon and cease his reckless conduct, yet he persisted over a considerable period of time"; and (4) immediately prior to the fatal collision, the appellant took his eyes off the road, while driving 115 mph, in an attempt to retrieve an object on the vehicle's floor. ***Peters***, 320 A.3d at 1240-41, 1242. We held that "the record supports the jury's finding that [a]ppellant acted with the requisite malice to sustain his convictions of third-degree murder and aggravated assault[,]" and emphasized that "this is not a typical case of ordinary recklessness that arises when someone chooses to drive while intoxicated." ***Id.*** at 1241, 1243 (citation and brackets omitted).

In the instant case, the trial court competently summarized ***Peters***, and related precedent, in its August 29, 2024, Memorandum Opinion and Order granting the Commonwealth's Motion to Amend the information to add a count of third-degree murder. ***See*** Memorandum Opinion and Order, 8/29/24, at 5-6 (unpaginated) (analyzing ***Peters*** and one of the cases ***Peters*** applied, ***Dunphy***, 20 A.3d at 1219-20 (in a vehicular homicide case, holding the Commonwealth presented sufficient evidence to sustain the appellant's conviction of third-degree murder, as "the totality of the circumstances" established that the appellant acted with the requisite malice, where he (1) traveled at an excessive speed, while intoxicated by alcohol, on a highway where pedestrians were present; (2) "speeded up to make [a red traffic] light" despite seeing pedestrians in front of him; (3) struck a pedestrian crossing the highway; and (4) sped away from the scene without stopping)).

The Commonwealth points out that the trial court, in its August 29, 2024, Memorandum Opinion and Order, which "permit[ted] the addition of murder of the third degree, cited the **Peters** Court several times[.]" **Id.** at 23 (capitalization modified); **see also** Memorandum Opinion and Order, 8/29/24, at 5-6 (unpaginated). The Commonwealth emphasizes the **Peters** Court's observation that the trial evidence in that case established that, in the minutes preceding the fatal crash, the intoxicated appellant

> traveled without headlights, at high rates of speed, and alternated his speed from fast to slow. He did not use his turn signals and continuously changed lanes and passed other vehicles too closely[.]

**Peters**, 320 A.3d at 1240 (citation, emphasis, and brackets omitted); **see also** Commonwealth Brief at 23.

> The Commonwealth complains that
>
> for the [trial] court to now say that only numerical terminology may be [used by the lay witnesses] … completely contradicts the analysis and holding it relied on less than a year earlier in its August 29, 2024, [Memorandum Opinion and Order], sterilizes the truth-finding process, and is legal error.

Commonwealth Brief at 14 (some capitalization and punctuation modified).

Pennsylvania Rule of Evidence 701 provides that a lay witness may offer "testimony in the form of an opinion" if it is "rationally based on the witness's perception"; "helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701(a)-(c); **see also** Pa.R.E. 602 ("A witness may testify to a matter only if evidence is

- 25 -

introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Commonwealth v. T.B.*, 232 A.3d 915, 919 (Pa. Super. 2020) ("Fact testimony may include opinion or inferences so long as those opinions or inferences are rationally based on the witness's perceptions and helpful to a clear understanding of his or her testimony." (citation omitted)). "[L]ay testimony is intended to describe something that jurors otherwise had not been able to experience for themselves, by drawing upon the sensory and experiential observations that the witness made firsthand." *Rose*, 172 A.3d at 1131.

It is well settled that "lay people are competent to express an opinion as to the speed a vehicle is traveling." *Commonwealth v. Reynolds*, 389 A.2d 1113, 1119 (Pa. Super. 1978); *see also Vrabel v. Commonwealth*, 844 A.2d 595, 598 (Pa. Cmwlth. 2004) (stating that "because the use of motor vehicles is so common, courts do not restrict testimony about the operation of motor vehicles to expert witnesses." (citations omitted)). *Cf.* Pa.R.E. 702 (governing expert testimony). This Court has stated that a lay witness may estimate a vehicle's speed if he or she had an "overall opportunity for adequate observation" of the subject vehicle, such that someone who has experience operating motor vehicles could accurately estimate the vehicle's

speed. ***Fisher v. Cent. Cab Co.***, 945 A.2d 215, 219 (Pa. Super. 2008) (citing

***Radogna v. Hester***, 388 A.2d 1087, 1089 (Pa. Super. 1978)).[23]

In ***Radogna***, this Court explained that

[some] decisions have required that the witness have something more than just a "fleeting" glance of the vehicle in question, … the important consideration being that the witness have at least a minimum of time to make a reasonable estimation of speed. Cases which have rejected a witness' observation because the witness did not see the vehicle in motion for more than a few feet before the collision have indicated that the witness' testimony was not admissible because of the brevity, the fleeting nature of the observation. However, [Pennsylvania courts have] never attempted to establish any minimum distance requirement for competency of lay witness estimates.

There are other cases in which the distance traveled by the moving vehicle during the period of observation has been appreciable, yet the court has rejected the witness' testimony because the moving vehicle had come directly toward the witness, making any estimation of speed speculative. The test for admissibility of lay witness estimations of speed, therefore, is not strictly connected with evidence of the distance traversed by the vehicle in question but, rather, depends upon the existence of an overall opportunity for adequate observation, in addition to the witness' prior experience with moving vehicles. Evidence of the distance over which the observed vehicle moved during the period of observation will go to the weight of the witness' estimation. If the distance is exceedingly small, the court may refuse to allow

---

[23] We pause to acknowledge that ***Fisher*** and ***Radogna***, as well as the authorities upon which the trial court in the instant case relied in support of its motion *in limine* ruling, are civil cases. Nevertheless, appellate courts, in criminal cases implicating the admissibility of lay opinion vehicle speed estimates, have frequently cited to civil cases. ***See***, ***e.g.***, ***Commonwealth v. Honeycutt***, 323 A.2d 775, 778 (Pa. Super. 1974) (discussed *infra*), and ***Commonwealth v. Reynolds***, 273 A.3d 1035, 927 MDA 2021 (Pa. Super. 2022) (unpublished memorandum at 10-11) (citing ***Fisher*** regarding lay witness opinion testimony about vehicle speed); ***see also*** Pa.R.A.P. 126(b) (providing this Court's unpublished memoranda filed after May 1, 2019, may be cited for their persuasive value).

the witness to offer an estimate of speed because it is apparent that the witness had only a "fleeting" glimpse of the moving vehicle.

*Radogna*, 388 A.2d at 1088-89 (internal citations and footnotes omitted); *see also Reynolds*, 389 A.2d at 1119 (stating that "[i]n order to establish a basis for the admission" of evidence pertaining to lay opinion vehicle speed estimations, "a party must show that the witness had an opportunity to observe a vehicle's movement and has a recognition of impressions of like vehicles at relative speeds."). Additionally, our Supreme Court has stated that "[a]bsolute accuracy is not required to make a witness competent to testify to the speed of an automobile[.]" *Finnerty v. Darby*, 138 A.2d 117, 123 (Pa. 1958).

In the instant appeal, the trial court relied upon this Court's civil decision in *Kearns*, *supra*, for the proposition that "[n]on-numerical estimates by lay witnesses such as 'fast,' 'excessive,' *etc*. are not permitted." Motion *in Limine* Order, 4/25/25, at 7 (unpaginated) (quoting *Kearns*, 546 A.2d at 1234). The *Kearns* Court in turn cited to our Supreme Court's decisions in *Catina v. Maree*, 447 A.2d 228 (Pa. 1982), and *Starner v. Wirth*, 269 A.2d 674 (Pa. 1970). *Kearns*, 546 A.2d at 1234. In *Catina*, the Court stated that "this Court has held 'while lay witnesses are permitted to express opinion estimates of vehicle speed in numerical terms, terms such as 'fast' or 'slow' or 'excessive' and the like have been found to be conclusory in nature as well as lacking in

evidentiary value.'" ***Catina***, 447 A.2d at 232 (quoting ***Starner***, 269 A.2d at 676).

We are guided by ***Honeycutt***, 323 A.2d 775, which this Court decided over half a century ago. In that case, at the appellant's jury trial for involuntary manslaughter, the Commonwealth sought to establish the *mens rea* element of recklessness for a conviction of that offense. ***Id.*** at 778. The Commonwealth presented testimony from a lay witness (Mrs. Wright) regarding the dangerous driving she observed shortly prior to the fatal collision. Mrs. Wright testified that while she was driving on a highway, she observed a car, operated by the appellant, racing another vehicle, at speeds significantly exceeding the speed limit. ***Id.*** at 777. After tailgating Mrs. Wright, both vehicles eventually sped past her, and the appellant cut her off. ***Id.*** Shortly thereafter, Mrs. Wright came upon the scene of multiple wrecked vehicles, including the two cars she had seen speeding. ***Id.*** The driver of a third vehicle was killed. ***Id.*** A jury convicted the appellant of involuntary manslaughter. ***Id.*** at 776.

On appeal, the appellant claimed, "the trial court erred in not excluding Mrs. Wright's testimony, and therefore erred in denying the appellant's post-trial motions in arrest of judgment or for a new trial." ***Id.*** at 778. This Court disagreed. We initially observed that

> [i]t is widely recognized that if the fact to be proved is speed, **and speed alone**, the observations of speed prior to an accident will usually be greatly circumscribed with respect to time and distance,

- 29 -

unless they are otherwise corroborated. Whether the testimony should be barred will vary with the facts from case to case[.]

*Id.* (internal citations omitted; emphasis added).

The ***Honeycutt*** Court determined that, under the circumstances in that case, "[s]uch a circumscription should not apply," where

the Commonwealth did not seek merely to prove speed, rather it sought to demonstrate that the **manner** in which the appellant drove was reckless. Of course, while circumstantial evidence may only be minimally relevant with regard to one issue, the same evidence may be highly relevant to prove another. Thus, contrary to the usually strict limitation of evidence of prior speed when offered only to show speed at the time of the collision, it has been said that, "where recklessness, wantonness, or wi[l]lfulness is an issue it is frequently necessary, or desirable in order to establish a strong case, to show not only an indifference to consequences at the instant an accident occurred, but also that such a state of mind persisted for several minutes prior to the accident. Where evidence is offered for this purpose[,] the court may admit testimony that the party was driving at a high and dangerous rate of speed at a relatively remote point." Annot., 46 A.L.R.2d 9, 62 (1956). In order to prove its case, the Commonwealth had to show more than the speed at which [the appellant] traveled; it had to show he drove in a manner which was "such a departure from prudent conduct as to evidence a disregard of human life or an indifference to consequences." ***Commonwealth v. Hartle***, 188 A.2d 798, 801 (Pa. Super. 1963) [(a case in which the appellant was convicted of involuntary manslaughter after a road racing-related accident that killed four people)]. ***See also Commonwealth v. Holman***, 50 A.2d 720 (Pa. Super. 1947). Unlike the speed at which a vehicle is traveling, a state of mind which demonstrates "a marked disregard for the safety of others" is not likely to change significantly in a matter of seconds[.] ***Commonwealth v. Clo***[***w***]***ser***, 239 A.2d 870, 873 (Pa. Super. 1968). Thus, a great deal of latitude is appropriate when circumstantial evidence is offered to show a state of mind[.] 1 Jones on Evidence, § 4:12 (6th ed. 1972). As Justice Musmanno has said, in a case where reckless driving was at issue, "To restrict the compass of a trial (criminal or civil) to the pinpoint of the culminating crisis would be to make verdicts of juries mere guesses." ***Gregg v. Fisher***, 105 A.2d 105, 110 (Pa. 1954).

*Honeycutt*, 323 A.2d at 778 (some internal citations omitted; bold emphasis in original; underline emphasis added; some citations modified). Accordingly, we concluded the trial court did not abuse its discretion in admitting Mrs. Wright's testimony. *Id.* at 778-79; *see also id.* at 778 (observing that "the Commonwealth did offer evidence which circumstantially corroborated the testimony of Mrs. Wright[,]" including photographs of the scene and the testimony of police who investigated the accident).

More recently, this Court issued our *en banc* decision in *Akhmedov*, 216 A.3d 307. In that case, wherein the defendant was charged with third-degree murder following a fatal vehicle accident, we reaffirmed that "[p]arties are to be given greater latitude to present evidence when they are tasked with establishing a state of mind." *Id.* at 317 (citing *Honeycutt*, 323 A.2d at 778).

Instantly, we determine the trial court abused its discretion in applying an overly strict application of the law regarding lay opinion testimony in the context of a criminal case. *See Honeycutt*, *supra*; *Akhmedov*, *supra*. Like the situation in *Honeycutt*, "[i]n order to prove its case, the Commonwealth had to show more than the speed at which [Rivera] traveled." *Honeycutt*, 323 A.2d at 778. Rather, the Commonwealth also will be required to prove Rivera's state of mind in connection with several charges, including third-degree murder. *See Wellman*, 344 A.3d at 23 (malice is an essential element of third-degree murder). Accordingly, the trial court should have afforded the

Commonwealth "greater latitude to present evidence," as it was "tasked with establishing a state of mind." *Akhmedov*, 216 A.3d at 317.

Moreover, as the Commonwealth correctly points out, in *Peters*, lay witnesses were permitted to offer **non-numerical** opinion testimony and descriptions of the appellant's reckless driving and excessive speed, in a case in which the Commonwealth was tasked with proving malice to establish appellant's guilt of third-degree murder and aggravated assault. *See Peters*, 320 A.3d at 1232, 1233. Specifically, the lay witnesses in *Peters* were permitted to testify that the intoxicated appellant (1) "erratically changed speeds, back and forth from fast to slow"; (2) "came flying right by me"; and (3) "came flying past me on the left-hand side[.]" *Id.* (citation omitted).

We acknowledge that our Supreme Court, in *Starner*, *supra*, and *Catina*, *supra* (*i.e.*, the authorities upon which the trial court in the instant case based its motion *in limine* ruling), stated that lay witnesses may offer opinions of vehicle speed only in numerical terms. Significantly, however, *Starner* and *Catina* are both older **civil** cases in which no party was required to prove a *mens rea*.

Consistent with the foregoing, we conclude that, in a criminal case in which the Commonwealth is required to prove a state of mind, lay witnesses are not strictly limited to assigning a numeric value to vehicle speed estimates and descriptions of driving. Rather, they are permitted to explicate and contextualize their speed estimations, as well as describe the manner in which

the vehicle is operated, provided that a sufficient foundation is laid. ***See***

***Peters***, 320 A.3d at 1232, 1233; ***Honeycutt***, 323 A.2d at 778-79.

Accordingly, we reverse the Motion *in Limine* Order to the extent that it limited the Commonwealth's proposed witnesses to phrasing their lay opinion testimony in terms of solely numeric speed estimations. However, we affirm the Order to the extent that it excluded Mr. Pritschman's proposed testimony, based on the trial court's finding that "[Mr. Pritschman's] numeric lay opinion as to speed is too speculative given his **limited ability to see the vehicle** and [his statement] that he heard it more than saw it." Motion *in Limine* Order, 4/25/25, at 10 (unpaginated) (emphasis added); ***see also Radogna***, 388 A.2d at 1089 (stating that a trial court "may refuse to allow the witness to offer an estimate of speed because it is apparent that the witness had only a 'fleeting' glimpse of the moving vehicle.").

We next address the Commonwealth's second and third issues together, as they both challenge the trial court's exclusion of the suspected marijuana and paraphernalia that police found while executing the search warrant for Rivera's vehicle. ***See*** Commonwealth Brief at 26-33. The Commonwealth contends this evidence is

> clearly tied to the giant marijuana cigarette left at the scene of the incident,[24] [] part of the facts of the case, and [] important …

---

[24] We reiterate that the trial court denied Rivera's motion *in limine* to exclude the marijuana cigarette. ***See*** Motion *in Limine* Order, 4/25/25, at 4-5 (unpaginated).

information having a significant and demonstrable bearing on the matter at hand, including the presence of malice.

*Id.* at 33 (footnote added; emphasis omitted; some punctuation modified);

*see also id.* at 17 ("By granting the Commonwealth's request to amend the criminal information to include murder of the third degree, the trial court absolutely made the rolling papers and baggy of marijuana relevant." (some capitalization modified)).

To provide context, we detail at the outset the trial court's reasoning, set forth in its Motion *in Limine* Order, regarding Rivera's motion to exclude the evidence found in his vehicle:

> [Rivera's] motion is [] granted as to any and all evidence and/or testimony regarding illegal controlled substances, rolling papers and/or other drug paraphernalia and unopened cans … found in … [Rivera's] vehicle, after it was allegedly abandoned by him, on or about November 11, 2023.  The court finds that the fact that **none of the items** later seized in the car pursuant to a search warrant **were alleged to be within reach of** [**Rivera**] **while driving his car on October 19, 2023, and the gap in time between this alleged incident and the search** [**of the vehicle** on November 11, 2023,] **is too significant to overcome a relevance objection**.  In addition, even if the time gap was significantly shorter, the prejudice of this tangential evidence, which is not connected, per the proffer, to smoking [] marijuana prior to the event, outweighs its probative value in light of the proffer.

Motion *in Limine* Order, 4/25/25, at 4-5 (unpaginated) (emphasis added; original emphasis omitted; some capitalization and punctuation modified).

Similarly, in its Rule 1925 Opinion, the trial court stated that

> since [the trial court] did not know where the marijuana and rolling papers were located [in Rivera's vehicle], then the relevance [of this evidence] became more speculative as to

> whether it had any bearing on the Commonwealth's belief that [Rivera] was high at the time of this incident, and [] its [prejudicial effect] outweighed its evidentiary worth.

Rule 1925 Opinion, 7/25/25, at 5 (unpaginated).

> On appeal, the Commonwealth claims that
>
> the trial court made incorrect findings of fact that were known to the trial court via a search warrant inventory filed of record on December 15, 2023, surrounding where items recovered from [Rivera's] vehicle were found. …. Additionally, the trial court incorrectly applied the law meant for analyzing the validity of warrantless searches for [the] presence of weapons by law enforcement, by using terms associated with those warrantless searches. **See Commonwealth v. Tuggles**, 58 A.3d 840 (Pa. Super. 2012). Those terms used by the trial court were "within the reach of the defendant" and/or "within the reach of the driver."

Commonwealth Brief at 30 (some capitalization, punctuation, and paragraph breaks modified). The Commonwealth asserts the court "further incorrectly opined that, since no drug charges were filed, the evidence was not relevant. The Commonwealth is not required to file every single charge that could be filed in the matter." **Id.** at 16.

"The threshold inquiry with admission of evidence is whether the evidence is relevant." **Commonwealth v. Yale**, 249 A.3d 1001, 1022 (Pa. 2021); **see also id.** at 1023 ("Evidence is to be liberally admitted at trial."). Evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

Pursuant to Rule of Evidence 403, a trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice,[25] confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403 (footnote added). The permissive language "may" in Rule 403 affords trial courts significant discretion in deciding whether to exclude relevant evidence as unfairly prejudicial under Rule 403. ***See Commonwealth v. Jordan***, 65 A.3d 318, 325 (Pa. 2013) ("Admission of evidence rests within the sound discretion of the trial court, which must balance evidentiary value against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury.").

However, "[**e**]**vidence will not be prohibited merely because it is harmful to the defendant.** Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision upon something other than the legal propositions relevant to the case." ***Commonwealth v. Knupp***, 290 A.3d 759, 776 (Pa. Super. 2023) (emphasis added; citation, brackets, and quotation marks omitted). "The trial court is not required to sanitize the trial to eliminate all unpleasant facts … where those facts are relevant to the issues

---

[25] "Unfair prejudice," in the context of applying Rule 403, "means a tendency to suggest decision on an improper basis to divert the jury's attention away from its duty of weighing the evidence impartially." ***Commonwealth v. Smith***, ____ A.3d ____, 2026 WL 530493, at *11 (Pa. Feb. 26, 2026) (footnote omitted) (quoting Pa.R.E. 403, cmt.).

at hand[.]" ***Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014) (citation and internal quotation marks omitted).

After review, we agree with the Commonwealth that the trial court abused its discretion in excluding the evidence police seized from Rivera's vehicle. Initially, the legality of the search warrant is undisputed. Also undisputed is the fact that police took custody of the vehicle shortly after the incident, impounded it, and did not thereafter disturb its contents until law enforcement searched it on November 11, 2023.[26] Accordingly, we cannot agree with the trial court that the three-week "gap in time"—*i.e.*, during which time Rivera's vehicle was securely impounded prior to execution of a lawful warrant—has any bearing on the relevance of the evidence police found in the vehicle. Motion *in Limine* Order, 4/25/25, at 5 (unpaginated).

Moreover, the trial court, in weighing the relevance of this evidence, placed undue importance upon the purported fact that "none of the items [] seized in the car … were alleged to be **within reach of** [**Rivera**] while driving his car on October 19, 2023[.]" ***Id.*** (emphasis added). We fail to discern the import of whether or not the items were within Rivera's reach at the relevant time. As the Commonwealth persuasively argues, "that type of analysis is meant for arguments surrounding **warrantless** searches for weapons by law enforcement of []areas within the reach of a defendant in a vehicle stop[,]

_____

[26] At no time did Rivera file a motion to suppress evidence or contend that the contents of his vehicle were disturbed while it was impounded.

and is used for justification … of police searching an area of a vehicle within the reach … of a defendant." Commonwealth Brief at 16 (emphasis in original).

It bears reemphasizing that the trial court permitted the Commonwealth to introduce other evidence that may tend to indicate Rivera had smoked marijuana prior to the incident. **See** Motion *in Limine* Order, 4/25/25, at 4 (unpaginated). Specifically, the Commonwealth proposes to introduce pictures of the marijuana cigarette, as well as testimony from multiple witnesses who will testify that they detected an odor of marijuana emanating from Rivera's person at the scene and that the scene smelled of marijuana. **See id.**; N.T., 3/24/25, at 54.

Finally, as we thoroughly discussed *supra*, trial courts should afford parties a "great deal of latitude … when circumstantial evidence is offered to show a state of mind[.]" **Honeycutt**, 323 A.2d at 778. Here, the proffered evidence was highly relevant to establishing Rivera's state of mind at the relevant time, and whether he acted with the requisite malice to support the third-degree murder charge. **See Peters**, 320 A.3d at 1237-40 (collecting cases); **see also Dunphy**, 20 A.3d at 1219 ("Malice may be inferred by considering the totality of the circumstances.").

Accordingly, as we conclude the trial court abused its discretion in excluding relevant evidence of suspected marijuana and contraband that

police found in Rivera's vehicle, we reverse the Motion *in Limine* Order to the extent it excluded such evidence.

In its fourth issue, the Commonwealth contends the trial court abused its discretion by *sua sponte* excluding the audio portion of the body cam video, where (1) Rivera purportedly never requested this relief in his motion *in limine*, and (2) the audio was relevant and admissible. ***See*** Commonwealth Brief at 33-35; ***see also id.*** at 18 (asserting the trial court "went beyond the scope of its duties by addressing this matter."). The Commonwealth claims this evidence relayed "part of the history and unfolding of the case [and] relate[s] to the marijuana cigarette left at the scene of the incident[.]" ***Id.*** at 18. The Commonwealth further explains that the officer who wore the body camera at issue "would be available to testify at trial." ***Id.*** According to the Commonwealth,

> the true problem is that the trial court incorrectly asserted that the defense filed a challenge to [the body cam video] in their motion *in limine*. The Commonwealth was never afforded [] notice and [given a] proper opportunity to [respond to] this issue or investigate it prior to [the motion *in limine*] hearing ….

***Id.*** at 35 (some capitalization modified).

In its Rule 1925 opinion, the trial court determined that it properly excluded the audio portion of the body cam video, reasoning as follows:

> While the Commonwealth correctly points out that defense counsel did not have a motion *in limine* specifically challenging police body camera recordings, the defense was seeking to exclude evidence of the marijuana cigarette found at the scene near [Rivera's] car when he stopped to check on the victim. [At the motion *in limine* hearing, t]he prosecution volunteered 14

- 39 -

minutes of body cam footage to the court in Commonwealth Ex. 1, a zip drive, to show the court "in real[-]time when the [marijuana] cigarette was found and what the officers were discussing …." [N.T., 3/24/25,] at 66-67. Clearly, the court did not *sua sponte* bring up the body cam [video] issues, and it was being addressed because of the defense motion to exclude any evidence regarding the [marijuana] cigarette found at the scene. After viewing Ex[hibit] 1, the court asked defense counsel if he was trying to exclude this footage, to which he advised the court that he was objecting to recorded statements like references [in the body cam video] to "Cheech and Chong," and it smells like marijuana, [and] it[']s freshly burnt …. *Id.* at 68-69. …. Finally, [at the motion *in limine* hearing,] **the prosecutor seemed to indicate that he had no problem with the court redacting some of the audio recording.** *Id.* at 7[0 (the prosecutor stating that the audio portion of the body cam video "can be edited to leave the Cheech and Chong portion out.").] The audio portion of the body cam video is obviously hearsay[27] and the Commonwealth did not offer any hearsay exception that would overcome any objection. Moreover, **the audio portion contains a narrative, and comments by law enforcement and others, in sort of a play-by-play format that is highly prejudicial, and would not be subject to cross-examination**, and may also lack a foundation. Hence, the court ruled that the audio portion of the body cam [video] must be muted, but the video could be played with the proper foundation.

Notably, redaction of portions of the audio would not necessarily remove the taint created by the unredacted portions, particularly if [Rivera] is not given an opportunity to confront the witnesses at trial, nor afforded the right to cross-examination. In addition, the jury may give more weight to contemporary comments and narrative, with the opportunity to judge credibility, if the person speaking is not called as a witness. **This ruling**

---

[27] "Hearsay is a statement the declarant does not make while testifying at the current trial or hearing [and] is offered in evidence to prove the truth of the matter asserted." **Commonwealth v. Fitzpatrick**, 255 A.3d 452, 471 (Pa. 2021) (citing Pa.R.E. 801(c)(1)-(2) (ellipses and quotation marks omitted)). "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." **Commonwealth v. Rivera**, 238 A.3d 482, 492 (Pa. 2020); **see also** Pa.R.E. 802 (rule against hearsay).

**does not prevent the officer who had the body camera from testifying about his observations at the scene, including identifying the odor of marijuana with a proper foundation, during his testimony at trial.**

Rule 1925 Opinion, 7/25/25, at 6-7 (unpaginated) (emphasis and footnote added; some punctuation modified).

Our review discloses the trial court's factual findings are supported by the record and its legal conclusion is sound. *See id.* Contrary to the Commonwealth's claim, the trial court did not *sua sponte* raise this matter. In his motion *in limine*, Rivera asserted that "[t]he Commonwealth has body camera video evidence" that contains inadmissible references to Rivera's drug abuse and problems with addiction. Motion *in Limine*, 2/21/25, ¶ 30. Rivera sought preclusion of "any argument or references … about drug possession, drug evidence, or any insinuation of drug influence while driving." *Id.* at 6 (unpaginated) (prayer for relief); *see also* N.T., 3/24/25, at 68-70 (Rivera's argument at the motion *in limine* hearing advocating for exclusion of the body cam video). Further, despite the exclusion of the audio portion of the body cam video, the Commonwealth will be permitted to present testimony from officers/witnesses regarding the odor of marijuana at the scene. *See* Rule 1925 Opinion, 7/25/25, at 6-7 (unpaginated).

In conclusion, we discern no abuse of the trial court's discretion in excluding the audio portion of the body cam video. *See*, *e.g.*, *Commonwealth v. Conway*, 534 A.2d 541, 544 (Pa. Super. 1987) (in a Commonwealth appeal, upholding the trial court's exclusion of the audio

portion of an interrogation video, recorded at the police station after defendant's arrest for DUI, where "the audio portion of the [video] would be both more misleading than probative and would contravene [the defendant's] constitutional right against self-incrimination"). Accordingly, the Commonwealth's fourth issue merits no relief.

In its fifth and final issue, the Commonwealth claims the trial court erred in precluding it from introducing the Facebook video into evidence, which (1) purportedly depicted Rivera video-recording himself driving a vehicle at a speed of 130 mph at some point prior to the incident; and (2) was relevant and admissible prior bad act evidence under Pa.R.E. 404(b)(2). *See* Commonwealth Brief at 35-37. Although the Commonwealth concedes the Facebook video is undated, it claims it can otherwise authenticate the video and establish that Rivera created it before posting it on his Facebook profile. *Id.* at 36 (asserting that (1) the voice of the driver in the Facebook video "can be identified by multiple members of law enforcement as that of [Rivera]"; and (2) the driver references an individual named "Banner" in the video, and the Commonwealth introduced evidence, at the motion *in limine* hearing, that one of Rivera's visitors while imprisoned in connection with this case is named Ryan Banner).

According to the Commonwealth, the Facebook video "is highly probative for showing malice and lack of accident." *Id.* at 37.

> [The Facebook] video becomes even more probative as a result of what happened after the [Commonwealth gave Rivera notice of

- 42 -

its intent to introduce this prior bad act evidence]. What happened was that the [Facebook] video was removed from [Rivera's] Facebook page, which is a form of tampering with evidence. It further shows a consciousness of guilt and lack of accident through an attempt to destroy evidence.

*Id.* at 19 (paragraph break omitted).

Rivera counters the trial court properly excluded the Facebook video, where the Commonwealth failed to authenticate this evidence or establish Rivera's association with it. *See* Appellee's Brief at 20-25. Rivera contends that even if it was properly authenticated, the probative value of the Facebook video evidence "is clearly outweighed by its potential for unfair prejudice, which would provide the jury an improper basis" for finding that Rivera "was 'driving at an extreme rate of speed,' and divert their attention away from weighing the evidence impartially." *Id.* at 24 (punctuation modified).

"The overriding principle in determining if any evidence, including demonstrative, should be admitted involves a weighing of the probative value versus prejudicial effect." *Serge*, 896 A.2d at 1177; *see also* Pa.R.E. 403, *supra*. Rule of Evidence 404(b) provides, in relevant part, as follows:

**(b)** Other Crimes, Wrongs, or Acts.

**(1) *Prohibited Uses.*** Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) *Permitted Uses.*** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible

only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2); *see also Commonwealth v. Bernarsky*, 348 A.3d 304, 326 (Pa. Super. 2025) (stating that "other bad acts evidence is admissible if offered for a non-propensity purpose" and "if its probative value outweighs its potential for unfair prejudice." (citation and brackets omitted)).

In other words, "prior bad acts may not be admitted for the purpose of inviting the jury to conclude that the defendant is a person of unsavory character and thus inclined to have committed the crimes with which he/she is charged." *Commonwealth v. Ross*, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*) (citation and internal quotation marks omitted). The *Ross* Court cautioned that the limited exceptions to Rule 404(b)'s general prohibition of prior bad act evidence "cannot be stretched in ways that effectively eradicate the rule." *Id.*

In *Akhmedov*, *supra*, a vehicular homicide case, this Court stated that

[m]ere similarities between a defendant's prior bad acts and the crimes for which he is being tried will not qualify for a Rule 404(b)(2) exception. Rather, to qualify for an exception to Rule 404(b)(1)'s general prohibition, **the prior bad acts must have a <u>close factual nexus</u> sufficient to demonstrate their connective relevance to the crime in question**.

*Akhmedov*, 216 A.3d at 316 (emphasis added; internal citations, quotation marks, and brackets omitted).

Instantly, in its Rule 1925 opinion, the trial court determined it properly excluded the Facebook video from evidence, as its potential for unfair prejudice outweighed its probative value.

> The [Facebook] video is 30 seconds long and depicts a person purportedly driving a vehicle, different from the one [Rivera] was driving allegedly at the time of this incident, with the speedometer at 130 mph, and the person on the video saying, "This is how you [] drive, Banner! Like that, bitch!" The Commonwealth claims it can prove through visitor logs at the Butler County Jail that a[n individual named] Ryan Banner has visited [Rivera] during [Rivera's] incarceration, but [the Commonwealth] will not call him as a witness at trial. The date the [Facebook] video was created is unknown, but the Commonwealth argues it proves [Rivera's] propensity to drive above the speed limit. **The [trial] court found that the [Facebook] video is of low probative value in comparison to the prejudicial impact since the driver cannot be seen on the video[;] it depicts a different, unidentified car with no link proffered to [Rivera;] and there is no timeframe showing how long before this incident the video was made.** … The trial court submits … that its ruling **falls squarely within its discretion** based upon the proffer and the court's knowledge of the entire case.

Rule 1925 Opinion, 7/25/25, at 8 (unpaginated) (emphasis added; some punctuation modified).

Upon review, the trial court's factual findings are supported by the record, and we discern no abuse of its ample discretion in excluding the Facebook video. *See id.*; *see also Hall*, 345 A.3d at 336 (stating that a determination "by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion.").

Assuming *arguendo* that the Commonwealth properly authenticated the Facebook video,[28] we determine the trial court acted within its discretion in weighing the probative value of this evidence versus its unduly prejudicial impact, and excluding it. We reiterate the Facebook video is undated; it undisputedly involved a different vehicle than the white Kia that Rivera drove in the instant incident; and the driver of the vehicle in the Facebook video is not visible. In light of these dissimilarities, it cannot be said that "a close factual nexus sufficient to demonstrate the[] connective relevance to the crime in question" exists. ***Akhmedov***, 216 A.3d at 316.

The weighing of the relevance and probative value of the Facebook video against its prejudicial impact was within the trial court's sole purview and sound discretion, which we do not lightly disturb. ***See Jordan***, ***supra***. Accordingly, we conclude the trial court did not abuse its discretion in granting Rivera's motion *in limine* to exclude the Facebook video. ***See***, ***e.g.***, ***Commonwealth v. Byrd***, 598 A.2d 1011, 1015 (Pa. Super. 1991) (holding the trial court did not err in excluding irrelevant video evidence proffered by defendant that could confuse the jury). ***Cf. Akhmedov***, 216 A.3d at 314, 318-19 (upholding trial court's admission of video evidence offered in a third-degree murder case in which the appellant, driving a silver Audi A4 in Northeast Philadelphia, was "participating in a drag race when he struck and

_____

[28] The trial court did not address the authenticity of the Facebook video in either its Motion *in Limine* Order or Rule 1925 Opinion.

killed a mother and three of her children as they attempted to cross the street[.]" This Court emphasized that (1) during the investigation, law enforcement obtained, from appellant's Facebook profile, a video that showed "a silver Audi A4 identical to appellant's" drag racing a BMW, at high rates of speed, on a known street in Northeast Philadelphia; (2) "in the video's comments section, appellant bristled at a commenter who believed the BMW won the race and asserted he had been driving 110 miles per hour in the clip"; (3) "the Commonwealth's case depended upon proving appellant's intent to drag race at the time of the accident" and the video was relevant and probative to establishing appellant's intent; (4) the circumstances of the drag racing video and the criminal incident were "sufficiently similar to constitute a close factual nexus"; and (5) the trial court did not abuse "its discretion in finding the prejudicial effect of introducing the video did not outweigh its probative value[,]" as it was "probative of the Commonwealth's allegation that appellant's recklessness was not a casual, momentary mistake in judgment[.]" (footnote omitted; some capitalization modified)).

Based upon the foregoing, we reverse the trial court's April 25, 2025, Motion *in Limine* Order to the extent that it precluded the Commonwealth from introducing (1) non-numerical lay witness descriptions of the manner and speed of Rivera's driving from Mr. Decker, Ms. Decker, and Mr. Lennon; and (2) evidence that law enforcement seized from Rivera's vehicle pursuant to a warrant. In all other respects, we affirm.

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  4/10/2026